## Boone et al. v. Department Of Welfare et al.

June 7, 1949.

B. F. Graziani for appellants.

William F. Simpson for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

This case is one of those which always causes the courts considerable difficulty in determining what is best for the future welfare of an infant. In this case the child is described as "an attractive little girl, friendly, well mannered and intelligent," about 5 years of age. She was prematurely born and placed in an incubator for some time. Later her mother placed her in the hands of a friend in Cincinnati. For some reason this friend later placed the girl in the home of Mr. and Mrs. Alfred Boone in Covington, the friend paying board for the child for about one year then ceasing. Petitioners continued to keep and maintain her and Mrs. Boone became much attached to her.

Following an investigation and report made to the Department of Welfare in December 1947, the Department took charge of her, and placed her in the Convent

of the Good Shepherd, where she has since remained. The child's mother is dead and the father's whereabouts unknown.

On December 30, 1947, the Boones filed petition in the Kenton circuit court, seeking to adopt the child, and after what appears to have been a careful and studious hearing the chancellor sustained the objections of the Department and declined to turn the child over to petitioners, dismissing the petition; this appeal follows, and we are called upon to determine from the evidence what is best for the future welfare of this child.

The petitioners were at the time of hearing about 58 years of age, apparently in good health. The husband was employed as night watchman at a liquor store in Covington at $50 per week; the wife manages a large rooming and boarding house, and claims that she earns about $400 per month. According to neighbors she is industrious and keeps her home clean and orderly. The home is owned by the two, and there is some evidence that it is worth about $10,000, with a mortgage to the amount of $2204.00, and they owe other debts to the amount of about $1280, these loans being used for repairs on the house, and purchasing furniture.

The testimony of a goodly number of neighbors and friends shows that during the time the girl was in their home she received good treatment, proper medical care, was kept well dressed and clean, and supplied with proper food, and that Mrs. Boone showed an "unusually strong attachment for the child and seems to have brought her up carefully during the time she lived with them." The proof shows that the home (216 W. Third Street) is not in the best residential part of the city, and the confidential report characterizes that part as a "questionable neighborhood." The portion of the house used by boarders is separate from the two room apartment occupied by petitioners.

The chancellor had before him the confidential adverse report filed by Miss Herndon, Welfare worker, and which apparently caused the Department to take charge of the child soon after the report was made. In that report, following matters of history, it was reported that the petitioners were 58 years of age; it does not

show that they have or have had children. Mrs. Boone's education was limited; Mr. Boone's limited to the fourth grade. The only property owned was the house under mortgage. The report also stated that the neighborhood in which petitioners lived was not a suitable place for rearing a child. It did not show any church affiliation on the part of either petitioner.

Our attention is directed to several misstatements and contradictions in testimony on the part of the husband and wife, not necessary to detail. Miss Cochran, juvenile probation officer, who showed familiarity with the case for some time, said her chief investigation began in December 1947, when Mrs. Boone reported that ''they were trying to kidnap the child,'' this had reference to interference on the part of some relatives of the child's mother. This witness relates that on one occasion she was investigating a delinquent case and found a woman who was supposed to be living illegitimately with a man in the Boone home, but this was denied by petitioners. She also characterized the place where Mr. Boone was employed as ''one of the worst dives in our city;'' she had experienced much trouble in the neighborhood with juvenile delinquents, boys playing slot machines, considerable fighting, requiring police visitation. While she says that Mrs. Boone gave the child good care and was devoted to her, she was of the opinion that it would not be for the best interest of the child to remain in petitioner's home; she thought they were too old; the rooming house was not the best place to raise a young girl. Another welfare worker testified to some of the facts above set out, and agreed that the home of petitioners was not the best place for the child, though agreeing that she had been well cared for while in the home.

There was introduced in the record an order of the juvenile court classifying the child as a delinquent, and she was placed in the care of the Welfare Department; a record from the circuit court showing that in January 1942, Mrs. Boone had filed an action for divorce on the grounds of abandonment and cruel treatment; nothing seems to have been done in this case, but in May 1943 the husband filed action for divorce on the grounds of cruel treatment. These actions were consoli-

dated and the wife answered and counterclaimed, charging as she had in her petition. However, in June 1943, on motion of the wife, she dismissed her petition and counterclaim without prejudice. In his written opinion the chancellor said that both suits had been abandoned.

Petitioners admitting that there had been some trouble and misunderstanding, said that they had forgotten and forgiven, and were living happily after reconciliation. However, the court had before him the following paid advertisement, which appeared in an evening newspaper "some few weeks ago:" "On and after this date I will not be responsible for any debts incurred by any one but myself. Alfred Boone, 218 West Third Street."

Reference to the clipping caused the chancellor to remark "this does not bear out the contention of petitioners that the home is peaceful and compatible." We quote from the chancellor's opinion:

"This is a delicate and temperamental child with a very high I. Q., and it is necessary to her health and future welfare that the best home, care and surroundings be found for her. * * * The report shows that the home environments and surrounding conditions are not conducive to the welfare of this child."

The chancellor also remarked that the investigators and Department were of the opinion that the advanced age of petitioners was an objectionable ground, and that a rooming and boarding house was not the best place for this particular child.

Section 405.320 (1) provides that no judgment shall be entered in adoption proceedings "unless the court finds the petitioners are of good moral character, of reputable standing in the community, and of ability to properly maintain and educate the child, that the best interests of the child would be promoted by adoption * * *." In his opinion the chancellor gave "due credit to Addie Boone for the fine efforts to give this child a proper home, but feels that the testimony and the investigating reports should be adopted by this court," and the petition was dismissed.

We join the chancellor in expressing approval of the good efforts on the part of Mrs. Boone in caring for the

child, whose separation will no doubt cause her considerable grief; however, in this class of cases we can only determine whether or not the court acted with discretion in denying the plea of petitioners.

A reference to our numerous opinions dealing with the subject will manifest that it is the duty of this court, as it was of the trial court, to ascertain from all the proof what would redound to the best interest of the child in question. Ridgeway v. Walter, 281 Ky. 140, 133 S. W. 2d 748; Bridges v. Matthews, 276 Ky. 59, 122 S. W. 2d 1021.

After giving the whole case careful consideration we find nothing in the record which would justify us in reversing the judgment of the trial court.

Judgment affirmed. .