v.

A.L.W.; P.L.S.; and B.R.C.S.,
A Minor, Appellees.

S.A.S. and T.L.S., Appellants,

v.

A.L.W.; P.L.S.; and M.P.W.,
A Minor, Appellees.

S.A.S. and T.L.S., Appellants,

v.

A.L.W.; P.L.S.; and A.L.W.
II, A Minor, Appellees.

G.A.C. Sr. and D.D.C., Appellants,

v.

P.L.S.; G.A.C. Jr.; and G.A.C.
III, A Minor, Appellees.

Nos. 2004–CA–002015–ME to
2004–CA–002018–ME.

Court of Appeals of Kentucky.

Nov. 23, 2005.

Susan M. Meschler, Shelbyville, KY, Phyllis Deeb (Lohman), Louisville, KY, for appellants.

Annette C. Karem, Louisville, KY, for appellee P.L.S.

Before GUIDUGLI and MINTON, Judges; ROSENBLUM, Senior Judge.[1]

*OPINION*

MINTON, Judge.

## I. INTRODUCTION.

These combined appeals arise out of the family court's denial of petitions to adopt four children without the consent of their biological mother, an action that placed in issue the involuntary termination of the biological mother's parental rights. The first question we must answer here is whether these appeals may proceed in light of the statutory prohibition against appeals from orders denying the involuntary termination of parental rights. We conclude that a conflicting, but more specific, statute allowing appeals from adoptions must prevail. So appeals may proceed. On the merits of the appeals, we hold that the family court did not err in denying the adoptions because we find substantial evidence exists in the record to support the family court's decision.

## II. THE PARTIES AND THE BACKGROUND OF THE CASES BELO W.

P.L.S. is the mother of five children: J.K.S., G.A.C. III, M.P.W., A.L.W. II, and B.R.C.S.[2] J.K.S., born in 1992 to P.L.S. and S.B., is not a subject of this action. G.A.C. III was born in 1996 to P.L.S. and G.A.C. Jr., an appellee who has voluntarily consented to termination of his parental rights. G.A.C. III resides with his paternal grandfather and step-grandmother, G.A.C. Sr. and D.D.C., who were awarded permanent custody of G.A.C. III in 2001.

Appellee A.L.W. is the father of M.P.W., A.L.W. II, and B.R.C.S. A.L.W. has filed a consent to adoption as to all three children. M.P.W., who was born in 1998, and A.L.W. II, who was born in 1999, reside with their paternal grandmother and step-grandfather, S.A.S. and T.L.S., who were granted permanent custody of M.P.W. and A.L.W. II in 2001.

Appellant C.M.C. is the paternal aunt of B.R.C.S., who was born in 2001. C.M.C. and her husband, C.L.C., were awarded permanent custody of B.R.C.S. in 2001.

The family court's detailed orders on the petitions for adoption relate the unfortunate circumstances leading to this appeal. P.L.S. married G.A.C. Jr. in 1996, and they were divorced in 2001. In 1999, while P.L.S. was still legally married to G.A.C. Jr., Child Protective Services filed a petition alleging that A.L.W., who was P.L.S.'s boyfriend, had abused J.K.S., G.A.C. III, and M.P.W. After further petitions were filed, P.L.S. entered into a stipulation of facts as to two counts of neglect of J.K.S., G.A.C. III, and M.P.W. and one count of neglect and risk of abuse as to G.A.C. III and M.P.W. Furthermore, P.L.S. stipulated to one count of neglect and sexual abuse of J.K.S.[3] In addition, P.L.S. admitted that she had violated an order requiring her to have no contact with A.L.W. As a result of those admissions, the family court found that G.A.C. III, M.P.W., and

---

1. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Although the full names of the children are, unfortunately, utilized in the parties' briefs, we will refer to them and all other parties by their initials. *See* Kentucky Revised Statutes (KRS) 199.570 (mandating that adoption records be confidential).

3. It is uncontested that A.L.W. sexually abused J.K.S.

A.L.W. II were abused children;[4] and their custody was taken from P.L.S., and she was ultimately ordered to pay $479.22 per month in child support, effective February 8, 2001.

In December 1999, Child Protective Services filed a petition alleging that A.L.W. II was in danger of serious physical injury. As a result, the Cabinet for Health and Family Services was granted emergency custody of A.L.W. II. But shortly thereafter, P.L.S. was awarded temporary custody of A.L.W. II by agreement with the stipulation that she have no contact with A.L.W. However, less than a year later, Child Protective Services filed another petition alleging that A.L.W. II had suffered a skull fracture. That petition resulted in the Cabinet again being granted emergency custody of A.L.W. II, who was placed with S.A.S. and T.L.S. P.L.S. ultimately stipulated to one count of abuse toward A.L.W. II, and S.A.S. and T.L.S. were awarded permanent custody of A.L.W. II.[5]

In flagrant violation of the no-contact order, P.L.S. and A.L.W. conceived B.R.C.S. during the no-contact period. The day after B.R.C.S. was born, Child Protective Services filed a petition alleging that B.R.C.S. was in danger of imminent death or serious bodily injury, based upon the lengthy list of earlier petitions. C.M.C. and C.L.C. were granted emergency custody of B.R.C.S. P.L.S. later entered into a stipulation of fact as to one count of risk of abuse toward B.R.C.S., and C.M.C. and C.L.C. were awarded permanent custody of B.R.C.S. in October 2001.[6] In May 2002, P.L.S. was ordered to pay $122.52 per month in child support for B.R.C.S.

Although custody of these children had been taken from her, P.L.S. had been granted one hour per week of supervised visitation with them. In September 2003, P.L.S. filed motions to increase her visitation with her minor children. Soon after those motions were filed, S.A.S. and T.L.S., C.M.C. and C.L.C., and G.A.C. Sr. and D.D.C. filed their petitions to adopt the children. In March 2004, the family court conducted a three-day bench trial on those adoption petitions, as well as P.L.S.'s motion for increased visitation. In August 2004, the family court issued orders denying each adoption petition and granting P.L.S.'s motion for increased visitation. These appeals followed.

## III. ANALYSIS OF THE ISSUES ON APPEAL.

### A. Does KRS 625.110 Require Dismissing These Appeals?

KRS[7] 625.110 provides, in its entirety, that "[a]ny order for the involuntary termination of parental rights shall be conclusive and binding on all parties, except that an appeal may be taken from a judgment or order of the Circuit Court involuntarily

---

4. KRS 600.020(1) defines an abused or neglected child. Such a child is one whose health or welfare is harmed or is threatened with harm due to a parent, *inter alia,* committing sexual abuse upon the child or allowing the child to be sexually abused; inflicting physical or emotional injury upon the child or permitting another to do so; creating a risk of physical or emotional injury to the child, or permitting another to do so; or creating a risk that an act of sexual abuse or exploitation will be committed upon the child, or permitting another to do so.

5. P.L.S. contends that the skull fracture occurred when P.L.S.'s cousin was watching A.L.W. II. No criminal charges were filed against anyone as a result of A.L.W. II's skull fracture.

6. S.A.S. and T.L.S. and C.M.C. and C.L.C. reside in the same home or, at least, did so at the time of the family court's hearings.

7. Kentucky Revised Statutes.

terminating parental rights in accordance with the Kentucky Rules of Civil Procedure." Neither side mentioned this statute in the briefs submitted to this Court. Because an adoption proceeding is a de facto proceeding for the termination of parental rights,[8] we asked the parties to submit supplemental briefs on what effect they perceived KRS 625.110 to have on these appeals. The Appellees' supplemental brief predictably argued that KRS 625.110 requires these appeals to be dismissed.

■ On the other hand, Appellants argued in their supplemental brief that KRS 625.110 had no bearing on this matter for two basic reasons. First, Appellants contended that they proceeded under KRS Chapter 199, which they assert is entirely separate from KRS Chapter 625. But this argument is unavailing since an adoption without consent of the living biological parents is, by its very nature, a proceeding seeking the termination of parental rights.[9] The General Assembly obviously did not envision KRS Chapter 199 to be wholly separated and discrete from KRS Chapter 625 since KRS 199.500 specifically references KRS 625.090.[10] In the cases at hand, the family court's orders denying Appellants' adoption petitions are also orders denying the termination of parental rights. These orders fall squarely under KRS 625.110.[11]

■ Appellants' second argument has more merit. That argument revolves around KRS 199.560, which says that "[a]ny party to any adoption proceeding shall have the same right of appeal to the Court of Appeals of Kentucky as in other equity actions." As these appeals clearly involve adoption proceedings to which Appellants are parties, KRS 199.560 purports to vest Appellants with the right to bring these appeals.

We are faced with one statute that clearly prohibits Appellants from filing these appeals and another statute that just as clearly permits them to file these appeals. The parties have not suggested, nor have we independently found, any way to harmonize these two conflicting statutes. Our efforts are further hampered because we have not found any case law that attempts to resolve the inherent conflict between these statutes that arises when one attempts to appeal from the denial of an adoption petition brought without the consent of the living biological parents. We must resort to the canons of statutory construction to resolve this perplexity.

KRS 625.110 deals with the involuntary termination of parental rights in all of its forms. As we have already discussed, an adoption proceeding to which a biological parent does not consent is one action by which a biological parent's parental rights may be involuntarily terminated.[12] Other

---

8. *See, e.g., Moore v. Asente,* 110 S.W.3d 336, 351 (Ky.2003) ("Like the final order in a TPR [termination of parental rights] proceeding, a valid adoption judgment terminates the parental rights of the birth parent.").

9. *Id.*

10. KRS 199.500(4) provides that "[n]otwithstanding the provisions of subsection (1) of this section, an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any

of the provisions of KRS 625.090 exist with respect to the child."

11. There is a dearth of cases interpreting KRS 625.110. And there is no legislative history for that statute available for us to examine. So we do not know why KRS 625.110 was enacted, or how the General Assembly believed that KRS 625.110 could comport with KRS Chapter 199, which governs adoptions.

12. *Moore,* 110 S.W.3d at 351; KRS 199.520(2) ("Upon granting an adoption, all legal relationship between the adopted child

methods do exist, however, for involuntarily terminating parental rights.[13] Thus, since a petition seeking adoption of a child against the child's biological parent's wishes is a discrete subset of involuntary termination of parental rights cases, then the statute allowing appeals from adoption proceedings (KRS 199.560) is controlling because it is more narrowly focused than is the general statute forbidding appeals of orders denying involuntary termination of parental rights petitions (KRS 625.110).[14] Furthermore, the general policy in this state is to permit any party aggrieved by a decision of a lower court an appeal with a higher court.[15] Next, although the decision is factually distinguishable and contains no discussion of KRS 625.110, we note that the Kentucky Supreme Court permitted an appeal from the dismissal of an adoption petition in *Day v. Day*.[16] Finally, we prefer to decide a case on its merits whenever possible.[17] So we believe that KRS 199.560 takes precedence over KRS 625.110, meaning that this appeal need not be dismissed.[18]

## B. Did the Family Court Properly Exclude Certain Evidence of P.L.S.'s Alleged Abuse of Other Children?

Before we address the ultimate issue in these appeals, namely, whether the family court erred in denying the Appellants' adoption petitions, we must first address Appellants' contention that the family court erred by refusing to consider evidence of child abuse P.L.S. allegedly inflicted on other children who are not the subject of these appeals.

and the biological parents shall be terminated except the relationship of a biological parent who is the spouse of an adoptive parent.").

**13.** For example, KRS 625.050(3) provides that "[p]roceedings for involuntary termination of parental rights may be initiated upon petition by the cabinet, any child-placing agency licensed by the cabinet, any county or Commonwealth's attorney or parent."

**14.** *DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952, 959 (Ky.1999) ("When two statutes deal with the same subject matter, one in a broad, general way and the other specifically, the specific statute prevails"); 73 Am. Jur.2d *Statutes* § 170 (2001) ("Similarly, with respect to a conflict arising between a statute dealing generally with a subject and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case.").

**15.** *See* Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court...."). However, we express no opinion as to whether KRS 625.110 runs afoul of Section 115 of the Kentucky Constitution because none of the parties raised that issue. *See Preston v. Clements*, 313 Ky. 479, 483, 232 S.W.2d 85, 88 (Ky.1950) ("The prevailing rule seems to be that the courts will avoid the question of constitutionality unless necessary to a proper determination of the merits of the cause under consideration."); 5 Am.Jur.2d *Appellate Review* § 703 (1995) ("Generally, an appellate court is not inclined to examine the constitutionality of a statute if a determination of the constitutional issue is not required in order to dispose of the case.").

**16.** 937 S.W.2d 717 (Ky.1997).

**17.** *See* 5 Am.Jur.2d *Appellate Review* § 862 (1995) ("it is preferred that an appellate court address the merits of an appeal whenever possible, so that any doubt should be resolved in allowing, rather than dismissing, an appeal.").

**18.** We are cognizant of the fact that KRS 625.110 was enacted later than KRS 199.560. We are also mindful of the fact that generally speaking, "if two statutes involving the same subject matter are in irreconcilable conflict, the later statute controls." *Logsdon*, 993 S.W.2d at 958. But because "an earlier enacted specific, special, or local statute prevails over a later enacted general statute[,]" we believe that KRS 199.560's specificity prevails over the general nature of KRS 625.110. 73 Am.Jur.2d *Statutes* § 169 (2001).

■ Since P.L.S. contested the Appellants' adoption petitions, the petitions were governed by KRS 199.500(4). As noted previously, that subsection provides that "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions of KRS 625.090 exist with respect to the child." KRS 625.090, which governs the grounds for involuntary termination of parental rights, provides that in order for such a termination to occur, the Court must find by clear and convincing evidence that the child either is an abused or neglected child or was previously adjudged to be an abused or neglected child [19] and that termination of the biological parents' parental rights is in the best interest of the child.[20] That statute later sets forth the factors that the Court must consider in determining the best interest of the child.[21] Among those factors is one relating to "[a]cts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family[.]" [22]

Appellants contend that the family court improperly excluded evidence that P.L.S. sexually abused other members of the family of the children involved in this appeal. More specifically, Appellants contend that the trial court should have permitted them to introduce evidence showing that P.L.S. physically abused I.W., a child whose father is A.L.W. but whose mother is not P.L.S. According to Appellants, the Jefferson Family Court issued an order requiring P.L.S. to avoid having any contact with I.W. (and his full sister, P.W.) due to the physical abuse P.L.S. subjected I.W. to while P.L.S. and A.L.W. cohabited.[23]

In response, Appellees first argue that any evidence of P.L.S.'s alleged abuse of I.W. and/or P.W. was properly excluded because they are not members of P.L.S.'s family, as required by KRS 625.090(3)(b). Although Appellees are correct in that P.L.S. is not related to I.W. or P.W., either by blood or marriage, they ignore the more salient point: I.W. and P.W. are half-siblings of some of the children involved in this appeal by virtue of the fact that A.L.W. is the father of M.P.W., A.L.W. II, and B.R.C.S., as well as I.W. and P.W. Thus, I.W. and P.W. are clearly members of the family of M.P.W., A.L.W. II, and B.R.C.S.

■ However, contrary to the tenor of Appellants' briefs, the family court did not issue a general prohibition on testimony regarding I.W.'s and P.W.'s dependency actions. As noted by Appellees, the trial court did permit general testimony regarding the fact that I.W. and P.W. were the

---

**19.** Such a finding must be made in accordance with KRS 600.020(1), previously quoted herein.

**20.** The text of KRS 625.090(1) reads as follows:

The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the pleadings and by clear and convincing evidence that:

(a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction;

2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding; [and]

\* \* \* \* \*

(b) Termination would be in the best interest of the child.

**21.** KRS 625.090(3).

**22.** KRS 625.090(3)(b).

**23.** Again, although the names of these other allegedly abused children are utilized freely in the parties' briefs, in order to protect the children's privacy, perhaps belatedly, we will refer to them only by their initials.

subjects of dependency actions while they were residing with P.L.S. The trial court only barred testimony that was confusing and unclear (due to the large number of children involved in this case, as well as I.W. and P.W.). Furthermore, contrary to Appellants' arguments, the family court did not issue a blanket prohibition of any testimony regarding documents from the dependency actions of I.W. and P.W. Rather, the family court simply ruled that S.A.S. could not testify as to those documents. This ruling was correct because Appellants did not submit certified copies of the record of the dependency actions, nor did they elicit testimony regarding those records by the records' custodian.[24] In addition, for whatever reason, Appellants' counsel did not argue below that the contents of the records of I.W.'s and P.W.'s dependency actions were within S.A.S.'s personal knowledge (by virtue of the fact that those children resided with her as a result of the dependency actions), nor did Appellants' counsel seek later to introduce the records through another competent witness.

■ Similarly, the trial court's decision to disallow testimony regarding P.L.S.'s alleged abuse of R.H. must be affirmed. R.H. alleged that P.L.S. placed her finger in R.H.'s vagina and anus while babysit-

ting. Eventually, a person involved with R.H.'s care[25] stipulated that P.L.S. had abused R.H.; and, apparently, P.L.S. was ordered to have no contact with R.H. However, P.L.S. was not charged with a crime arising from her alleged sexual abuse of R.H. Thus, any evidence regarding that alleged abuse would appear to fall under Kentucky Rules of Evidence (KRE) 404(b).[26]

■ One of the most important inquiries in assessing whether evidence of prior bad acts should be admissible under KRE 404(b) is the relevance of the prior bad acts.[27] In other words, the question is whether the evidence is relevant "for some purpose other than to prove criminal disposition of the accused[.]"[28] In the cases at hand, Appellants clearly sought to introduce the evidence regarding P.L.S.'s alleged abuse of R.H. for the truth of the matter asserted. In other words, the Appellants wanted to introduce that evidence to show that P.L.S. did, in fact, abuse R.H.[29] The introduction of such "bad character" evidence falls squarely within the exclusionary properties of KRE 404(b). Thus, we find no error in the trial court's decision to exclude the evidence regarding P.L.S.'s alleged abuse of R.H.[30]

**24.** *Cf., e.g., Skimmerhorn v. Commonwealth,* 998 S.W.2d 771, 776–777 (Ky.App.1998) (holding that public records are admissible if certified copies of the records are offered, or if a person who has compared a copy with the original testifies that the copy is authentic).

**25.** The testimony was unclear as to whether the person was R.H.'s father or another party responsible for R.H.'s care.

**26.** In relevant part, KRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

**27.** *Bell v. Commonwealth,* 875 S.W.2d 882, 889 (Ky.1994).

**28.** Lawson, *The Kentucky Evidence Law Handbook,* 4th Ed., Sec. 2.25[3][b] (2003).

**29.** Such evidence could not be used to show a pattern or "signature crime" because R.H. is the only child who P.L.S. is alleged to have personally sexually abused.

**30.** The family court did not base its ruling on KRE 404(b). However, we may affirm for reasons not discussed by the trial court. *See, e.g., Cooksey Bros. Disposal Co., Inc. v. Boyd County,* 973 S.W.2d 64, 70 n. 3 (Ky.App. 1997).

## C. Did the Family Court Err When It Denied Appellants' Adoption Petitions?

■ Having determined that the family court correctly resolved the evidentiary issues argued by Appellants, we now turn our attention to the correctness of its ultimate conclusions. In doing so, we are mindful of the fact that "[t]his Court's standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR [Kentucky Rules of Civil Procedure] 52.01 based upon clear and convincing evidence, and the findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings." [31]

■ As stated above, in order to grant Appellants' involuntary adoption petitions, the family court was required to find that "any of the provisions of KRS 625.090 exist with respect to the child." [32] KRS 625.090 provides that a parent's parental rights may be terminated only if the child is found to be (or has previously been found to be) an abused or neglected child *and* if the termination is found to be in the child's best interests.[33] The family court's orders denying Appellants' termination petitions set forth a finding that the children involved in these cases are abused and neglected, Appellants' arguments to the contrary notwithstanding.[34] Thus, boiled to its essence, the issue before us is whether the family court erred in concluding that terminating P.L.S.'s parental rights would not be in the best interest of these children.

As is typical in these types of emotional, difficult cases, each side presented the family court with an abundance of evidence. Predictably, each side, on appeal, also highlights large volumes of evidence that could be used to support its position. Given our limited standard of review, we need not belabor this opinion by examining each argument and piece of evidence in the record because our ultimate concern is whether the family court's decisions are supported by substantial evidence.[35]

The record does contain evidence that supports the family court's decisions. For example, the record reflects that, for at least some amount of time, P.L.S. did attend parenting classes. P.L.S. also received counseling regarding domestic violence and recognizing the warning signs of abuse. That counseling has apparently borne at least some fruit as P.L.S. has been in a relationship free from abuse for several years. P.L.S. also is employed and has earned three associate degrees and is working toward her bachelor's degree. Furthermore, P.L.S. has made regular child support payments since December 2002 and helps to pay the bills in a home she shares with another. Finally, the visitation center supervisor at the location

---

**31.** *M.P.S. v. Cabinet for Human Resources,* 979 S.W.2d 114, 116 (Ky.App.1998). *See also Boone v. Department of Welfare,* 310 Ky. 568, 221 S.W.2d 454, 456 (Ky.1949) (holding that in adoption proceedings, an appellate court can only determine whether a trial court acted within its discretion); 2 Ralph S. Petrilli, *Kentucky Family Law* § 29.19 (1988) ("The same test is used on appellate review of an adoption case as in many other areas of family law. The court will be affirmed unless the decision was clearly erroneous or an abuse of judicial discretion.").

**32.** KRS 199.500(4).

**33.** *See* KRS 625.090(1)(a) and (b).

**34.** For example, page 15 of the trial court's order concerning G.A.C. III states that "[t]his Court found in the dependency action in Case No. 99–FY–0870 that [G.A.C. III] was an abused and neglected child, which the Court in this action also finds."

**35.** *M.P.S.,* 979 S.W.2d at 116.

where P.L.S.'s supervised visits with her children occur testified that P.L.S.'s children have a wonderful time during their visits and that the children run to P.L.S. when they see her. Thus, it appears as if P.L.S. has continued to have at least some measure of a parental bond with her children.

Obviously, the record contains plenty of evidence that would support a decision contrary to that reached by the family court. In fact, were we to consider this matter afresh, we may well have arrived at a different conclusion. But the fact that the record contains evidence that would support a different result does not mean that the family court's decision must be reversed. As noted above, the record contains evidence in support of the family court's ultimate conclusions. Thus, although the Appellants have, by all indications in the record, done an admirable job of lovingly caring for all of the children involved in these appeals, we are duty-bound to affirm.

### IV. DISPOSITION.

For the foregoing reasons, the orders of the Jefferson Family Court are affirmed as to all four children herein.

ROSENBLUM, Senior Judge, concurs.

GUIDUGLI, Judge, concurs in result only and files separate opinion.

GUIDUGLI, Judge, concurring in result only.

I believe the appeal should be dismissed based upon KRS 625.110. KRS 625.110 clearly states that the denial of an involuntary termination of parental rights cannot be appealed. If parental rights are not terminated, then an adoption cannot proceed. In this case, the family court refused to terminate P.L.S.'s parental rights and that simply is the end of the matter.

I concur in result only because by affirming the family court's order, the result is the same as if the appeal had been dismissed based upon KRS 625.110.