ACREE, JUDGE:
A.F. (Mother) and M.F. (Father) appeal the Greenup Circuit Court's interlocutory judgment entered pursuant to KRS[1] 199.502(1) terminating their parental rights regarding their biological child, K.F. (Child). They seek reversal arguing the family court erred procedurally and substantively. We affirm.
BACKGROUND
Child lived with Mother and Father from her birth in April 2014 until September 2014 when Mother was incarcerated. For the next month, Child remained in Father's care. During that month, Mother's aunt and uncle, L.B. and B.B., assisted Father with childcare to accommodate his work schedule. The controversy among the parties began when L.B. and B.B. refused to return Child to Father and contacted the Kentucky Cabinet for Health and Family Services.
The Cabinet filed a dependency, neglect, or abuse petition, offering Mother's and Father's continued drug use and Mother's incarceration as grounds for the petition. By agreement, the family court placed Child with L.B. and B.B. pursuant to an order of temporary custody. Child was three to four months old. The biological parents stipulated to the petition and negotiated a case plan with the Cabinet. According to the case plan, Father would have weekly visitation with Child and was ordered to cooperate with the Cabinet. The Cabinet recommended that "the permanency goal be return to parent and allow [Mother and Father] time to complete their case plan and work on sobriety."
When Mother was released from incarceration, she immediately checked into long-term substance rehabilitation at The Healing Place in Louisville. Two months later, L.B. and B.B. filed for custody of Child. Following a hearing in the custody case, the family court awarded Father and *68 L.B. and B.B. joint custody with substantial parenting time for Father. The effect of this petition was to remove the case from the juvenile docket. The family court noted that Father obtained a job and housing, cooperated with the Cabinet, and "[was] doing a remarkable job in working toward trying to regain custody of his daughter."
Mother successfully completed her rehabilitation in 2015 and began living with Father. At that time, Child saw both parents for six hours every other weekend and holidays. Eventually, however, L.B. and B.B. began deviating from the visitation schedule. This prompted Father to file a motion to enforce it. The family court compelled compliance by a separate order, violation of which would constitute contempt.
Shortly thereafter, Mother and Father were reincarcerated. The family court suspended Father's visitation and awarded L.B. and B.B. sole custody. Both biological parents were paroled in 2016. Father's Day, June 19, 2016, was the last day either Father or Mother visited with Child. Both were reincarcerated in 2017, when Mother violated the terms of her parole and the Commonwealth charged Father with robbery.
Soon after Mother's release from prison in September 2016, she secured employment, but suffered a relapse, engaging again in the use of illegal drugs. From January to March 2017, her whereabouts were unknown even to her mother who filed a missing person report.[2]
L.B. and B.B. filed the petition in this case on February 5, 2017, to adopt Child without Mother's and Father's consent. On March 30, 2017, the confidential report required of the Cabinet by KRS 199.510 was filed with the court clerk. On June 13, 2017, Mother began sending monthly twenty-dollar money orders to B.B. for Child's support. As of the date of the interlocutory judgment, the total amount of support Mother paid was $280. Mother also enrolled in therapy, parenting classes, and outpatient treatment.
The family court conducted a hearing on September 6, 2017, to consider only whether L.B. and B.B. could establish, by necessary proof, the elements required by KRS 199.502(1) to terminate Mother's and Father's parental rights. The family court deferred ruling on the adoption itself.[3]
During the hearing, counsel for Mother called to the witness stand the Cabinet's Social Service Clinician who prepared the confidential report. There was an objection when counsel expressed knowledge of the report's content by asking the clinician *69 questions challenging its completeness. After the family court stated its belief that the confidential report was for the court's eyes only,[4] it reminded counsel that the proceeding was bifurcated. The court eventually ruled that questions should be limited to the witness's knowledge of facts relating to termination of parental rights, not the adoption. The parents took issue with that ruling. As discussed below, that ruling is at the center of one issue under review.
The family court found the proof to have satisfied the requirements of KRS 199.502(1)(a), (e), and (g) as to both Mother and Father, and issued its findings of facts, conclusions of law, and judgment, terminating Mother's and Father's parental rights.[5] It entered this interlocutory judgment thirty-five (35) days after the close of arguments.
Mother and Father sought dismissal of the case on the procedural ground that KRS 625.090(6) requires the family court to "enter findings of fact, conclusions of law, and a decision as to each parent-respondent within thirty (30) days...." The motion was denied. This appeal followed.
ISSUES AND STANDARDS OF REVIEW
Mother and Father argue the thirty-day restriction of KRS 625.090(6) for rendering judgments is not limited to involuntary termination of parental rights actions brought under KRS 625.050, et seq. , but applies as well to adoptions without the consent of parents brought under KRS 199.502. Therefore, they argue, the adoption petition should have been dismissed. This presents a question of statutory interpretation. "The interpretation of statutes is a matter of law which we review de novo." Commonwealth v. Moore , 545 S.W.3d 848, 850 (Ky. 2018) (citation omitted).
Their second ground for reversal is that the family court improperly refused to allow them to question the Social Service Clinician regarding the report the Cabinet filed pursuant to KRS 199.510. That questioning, argue Mother and Father, would reveal the report fails to strictly comply with the applicable statute. This is an evidentiary ruling. "[T]he standard of review of a trial court's evidentiary rulings is an abuse of discretion." Ten Broeck Dupont, Inc. v. Brooks , 283 S.W.3d 705, 725 (Ky. 2009) (citation omitted).
Finally, Mother and Father argue the family court's findings of fact supporting statutory grounds for terminating their parental rights are not based on substantial evidence. Our review of findings of fact *70 in adoption actions involving terminations of parental rights is confined to the clearly erroneous standard set forth in CR[6] 52.01. S.B.B. v. J.W.B. , 304 S.W.3d 712, 715 (Ky. App. 2010). However, "to pass constitutional muster, the evidence supporting termination must be clear and convincing." R.P., Jr. v. T.A.C. , 469 S.W.3d 425, 427 (Ky. App. 2015) (citation omitted); Santosky v. Kramer , 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1391-92, 71 L.Ed.2d 599 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.").[7] As this Court has previously stated, clear and convincing proof does not mean uncontradicted proof. S.B.B. , 304 S.W.3d at 715.
ANALYSIS
Judgment entered 35 days after hearing does not fail to comply with KRS 199.502
The biological parents argue the family court violated their procedural and due process rights by failing to comply with the statutory requirements of KRS 625.090(6) which says "the Circuit Court shall enter findings of fact, conclusions of law, and a decision as to each parent-respondent within thirty (30) days[.]" We conclude KRS 625.090(6) is inapplicable to actions brought under KRS 199.502.
"[A] petition seeking adoption of a child against the child's biological parent's wishes is a discrete subset of involuntary termination of parental rights cases...." C.M.C. v. A.L.W. , 180 S.W.3d 485, 490 (Ky. App. 2005). Such an action "is governed in its entirety by KRS Chapter 199. Provisions of KRS Chapter 625 are applicable only as permitted by KRS 199.500(4), and as specifically enumerated in KRS 199.502."[8] R.M. v. R.B. , 281 S.W.3d 293, 297 (Ky. App. 2009). KRS 625.090(6) is not applicable to adoption actions under KRS 199.502 which includes a less restrictive instruction to the family court. Compare KRS 625.090(6) ("Upon *71 the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision as to each parent-respondent within thirty (30) days either....") with KRS 199.502(2) ("Upon the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision either....").
The family court was not required to issue its interlocutory judgment within thirty days of the termination portion of the bifurcated hearing.
Restricting clinician's testimony was not an abuse of discretion
The Cabinet has a role in adoptions. In accordance with KRS 199.510, the Cabinet must investigate and file a confidential report with the family court before a hearing can take place. KRS 199.515 ("After ... the report required by KRS 199.510 ha[s] been filed, the court ... may set a time for a hearing on the petition to be conducted in chambers in privacy[.]"); Baker v. Webb , 127 S.W.3d 622, 626 (Ky. 2004) (" KRS 199.515 allows the court to conduct an independent hearing after the Cabinet has filed its investigation report"). KRS 199.510(2) requires that "[t]he report of the cabinet ... shall be filed with the court as soon as practicable but not later than ... ninety (90) days after the filing date of the petition...." Its statutory purpose is to give some assurance to the court of the veracity of the prospective adoptive parents' allegations, that they are financially able and morally fit to adopt the child, that adoption is in the best interest of the child, and that the child is suitable for adoption. KRS 199.510(1).
In this case, a Social Service Clinician investigated, prepared, and delivered the required report to the Cabinet's Family Services Office Supervisor. The supervisor mailed the report to the family court on March 20, 2017, and the court clerk filed the report on March 30, 2017 - fifty-three (53) days after the filing of the adoption petition, well within the statutory requirement.
The letter identified, by name, the Social Service Clinician who prepared the report and provided her contact information, in case the court thought "any further information is needed." Furthermore, the letter itself provided the following information from the Cabinet:
The petitioners are the Maternal Great Aunt & Uncle of the child to be adopted. The child has resided with the petitioners since she was 3 months old. The Department for Community Based Services recommends this adoption be granted provided all legal requirements have been met....
The letter enclosed Child's birth certificate that gives Child's name and the names of Mother and Father. The report itself described Child, the birth parents, the adoptive parents, and the Cabinet's assessment of how Child has adjusted to the adoptive family. It also notes that termination of the parental rights of the birth parents has not occurred and recommended the adoption be granted.
*72 Mother and Father take issue with the report. They claim the adoption petition should have been dismissed because the Cabinet's report was statutorily noncompliant. To establish the point at the hearing, Mother called the clinician to the stand, not as a hostile witness, but to test the sufficiency of her report. Mother began by challenging the clinician for taking at face value the statements of L.B. and B.B., with no input from Mother or Father.[9]
Although the court gave Mother's counsel leeway in questioning the clinician, the court ultimately prohibited questioning about the adequacy of the adoption report.[10] Mother and Father assert the family court erroneously refused to permit questioning of the clinician that would have revealed the report: (1) did not include a statement as to whether the contents of the petition are true; (2) was not dated; (3) contained incorrect statements; and (4) was prepared without the biological parents' input. We are not persuaded.
We acknowledge bifurcation of proceedings under KRS 199.502 changes things. As the family court pointed out, and as Mother acknowledges in her brief, bifurcation means that if an interlocutory termination of parental rights order is entered, Mother and Father "will have no standing to object to the report when the adoption" itself is adjudicated; "if not permitted to object at the subject [termination] hearing, they are effectively barred from doing so." (Appellant's brief, p. 13).
Our concern, however, is that neither Mother nor Father objected to a bifurcated proceeding. Any argument that bifurcation is not permitted by KRS 199.502, or that bifurcation in this case prejudiced Mother's and Father's defense of parental rights, cannot now be asserted because neither argument was preserved. As necessarily implied by our footnote 3, we see no procedural impediment to bifurcating these the proceedings. Bifurcation, however, is not routine practice.[11]
To the extent Mother and Father assert an erroneous evidentiary ruling, we decline to disturb it. Limiting examination in this instance was not an abuse of discretion. This portion of the bifurcated proceeding addressed only the issue of *73 termination of parental rights. The court's correct view was that the substance of the report was the adoption, not the termination of parental rights. Therefore, the evidence Mother's counsel sought to elicit was not about the matter at hand - the termination proceeding - and, therefore, was ruled irrelevant by the family court. We find no abuse of discretion in that ruling.
Furthermore, we disagree with Mother's and Father's argument that, in the four different ways they identify, the report failed to comply with the statute. The first requirement of the report is that it state "[w]hether the contents of the petition required by KRS 199.490 are true...." KRS 199.510(1). Mother and Father claim the report "did not include a statement as to whether the contents of the petition required by KRS 199.490 are true." (Appellants' brief, p. 12; emphasis added). Having considered the argument as follows, we conclude the report satisfies that requirement.
Contrary to the Appellants' implication, the statute does not require a special incantation to verify the petition. It is enough that the allegations in the petition and the report's findings parallel one another. KRS 199.510 requires only "that the report be made and submitted to the court [where it becomes] a matter within the competence of a qualified trial judge to weight [sic] and determine." Warner , 401 S.W.2d at 64.
We have examined the report and find no statement that contradicts the petition's allegations required by KRS 199.490. Tracking the statute, the report includes required details about the petitioners; required details about the child sought to be adopted; the relationship of the child to each petitioner; a description of the child's property (stating only that she has "ample clothing"); the names of the biological parents of the child; and that the addresses of the biological parents were not known to the Cabinet. The report omits addressing only one item required to be in the petition - the full name by which the child shall be known after adoption. This omission is not enough for this Court to conclude the report fails to say "[w]hether the contents of the petition required by KRS 199.490 are true[.]" KRS 199.510(1)(a).
The second objection to the report - that it is not dated - is baseless because the Cabinet's cover letter transmitting the report to the court was dated March 20, 2017. To the extent dating the report is required, that suffices.
The third and fourth objections are, in effect, one and the same - that the report includes the incorrect statement that the whereabouts of Mother and Father were unknown to the Cabinet and, therefore, they had no input into the report. Mother and Father assert they "were available [to be interviewed], and their respective locations were known [to the Cabinet]." (Appellants' brief, p. 12). This is refuted, at least as to Mother by her own testimony.[12] However, presuming the report of their inaccessibility was false, we fail to see how such error prejudiced the family court's decision in this case. Both Mother and Father testified. Their live testimony was what was necessary for the family court to make its decision. That testimony was their opportunity to convince the court that both the report and the petition were arbitrary or unreasonable, including the Cabinet's best-interests determination. Dickey v. Boxley 481 S.W.2d 283, 284 (Ky. 1972) ("report to the court ... [and its] findings must be accepted *74 by the court unless they are arbitrary or unreasonable" (citations omitted) ). Mother and Father failed to convince the family court in this case that the adoption petition should not move forward and past the termination of parental rights phase.
Family court's findings were supported by clear and convincing evidence
The biological parents argue that the facts and circumstances of this case do not establish by clear and convincing evidence that they had the requisite mental intent to abandon their child. We recognize the "termination of parental rights is a grave action which the courts must conduct with 'utmost caution.' " R.P., Jr. , 469 S.W.3d at 427 (quoting M.E.C. v. Commonwealth, Cab. for Health and Family Svcs., 254 S.W.3d 846, 850 (Ky. App. 2008) ). Consequently, we identify certain traps family courts must avoid in carrying out their charge of considering a person's fitness to parent a child.
We have held that incarceration alone cannot serve as the basis for terminating parental rights. J.H. v. Cabinet for Human Resources , 704 S.W.2d 661, 633-64 (Ky. App. 1985). Citing J.H. , Mother and Father contend the trial court's finding of abandonment is based solely on their incarceration. Certainly, if the court's decision to terminate Mother's and Father's rights had been based solely on the fact of incarceration, it would be in error. But it was not.
The family court does not rely on the parents' incarceration to support its termination order. In fact, the family court's termination order never mentions the parents' incarceration except to identify Father's current residence. The family court was more concerned with the continued drug-use by each parent and the limited amount of time each parent saw the child. The court focused on Mother's and Father's conduct while not incarcerated.
While not incarcerated, Mother and Father were together when Father visited with Child. They remained together until the two were separated in January 2017.[13] However, Father testified that neither he nor Mother had seen Child since Father's Day, June 19, 2016, some fifteen months prior to the hearing. Mother acknowledged that, during the timeframe in question in this case, she relapsed multiple times in her drug use and had participated in, and failed, at least four drug treatment or rehabilitation programs. She testified that her newest sobriety date was March 15, 2017, a month after the adoption petition was filed.
Based on such proof, we are unable to say the family court's findings are clearly erroneous. In substance, they are indistinguishable from those in R.P., Jr. , where we said:
Kentucky Revised Statute[s] (KRS) 199.502(1) sets forth that "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of [nine] following conditions exist with respect to the child[.]" (Emphasis added). In this case, the trial court relied on the requirements provided in subsections (a), (e), and (g):
(a) That the parent has abandoned the child for a period of not less than ninety (90) days;
*75 (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]
469 S.W.3d at 427. The evidence in this case, as set forth in the family court's interlocutory judgment, supports the same findings regarding the existence of these conditions as were found in R.P., Jr. We cannot say that the family court's assessment of the evidence as clear and convincing is an abuse of discretion.
The biological parents also argue that the family court erred because the facts and circumstances exhibit a reasonable expectation of improvement. The Mother argues that since she was released from prison, she completed intensive outpatient treatment, parenting classes and counseling, paid child support, and gained employment, all without a court order, she shows signs of improvement. The Father argues that: (1) the family court never ordered child support; (2) the court awarded him joint custody in October 2015; (3) he maintained his visitation schedule until the court awarded L.B. and B.B. sole custody in June 2016; and (4) he has another adult daughter with whom he is significantly involved.
The family court considered Mother's recent efforts. That is apparent from the record. However, the judgment implicitly reflects that the family court considered Mother's efforts too little and too late to reclaim a relationship with Child which, for Child's tenderest years, Mother voluntarily subordinated to pursue an illicit life of drugs and company with those who do worse.
Father defends his failure to render any support for Child with the old bromide that he was never ordered to pay child support. This is no excuse. "[P]arents not only have a universal and moral duty to support and maintain their minor children, but they also have a statutory duty. KRS 405.020." Smothers v. Baptist Hospital East , 468 S.W.3d 878, 883-84 (Ky. App. 2015) (quoting Ciampa v. Ciampa, 415 S.W.3d 97, 101 (Ky. App. 2013), review denied (Dec. 11, 2013) ). That he was awarded joint custody and visited Child until June 2016 is not persuasive at all given the absence of any contact thereafter. And the fact that he has a daughter from a previous relationship who, at the time of the hearing was about to enter college, has little to do with the unparent-like conduct that led to the conditions set out in KRS 199.502(1) and were found to exist relative to Child. Furthermore, at the time of the hearing, Father was awaiting trial on charges that could (and did[14] ) incarcerate him for ten (10) years.
*76 The family court must weigh factors to determine the best interest of the child. KRS 199.520(1). When determining whether a parent has a reasonable expectation for improvement, the court will also examine the parent's current parenting ability, rather than just past behavior. M.E.C., 254 S.W.3d 846, 854. In this case, the parents have a history of drug abuse that, despite numerous efforts at rehabilitation and treatment, they are unable to permanently control. Their lack of control in this regard, however, does not mitigate the impact of their failure to visit or support Child after Father's Day 2016.
It was only after L.B. and B.B. filed their petition that Father's interest in Child manifested in cognizable conduct and then only by his hearing testimony. Only after the petition did Mother begin sending twenty-dollar money orders to B.B. After the petition, Mother began celebrating her newest sobriety date of March 15, 2017 and attempted yet another rehabilitation.
The family court bears the responsibility to weigh the evidence and make factual findings based on clear and convincing evidence. This Court cannot substitute its judgment for that of the family court unless those findings are clearly erroneous. We are unable to conclude this family court was clearly erroneous when it found, by clear and convincing evidence, the existence of the conditions enumerated in KRS 199.502(1)(a), (e), and (g) with respect to Child as to both Mother and Father.
CONCLUSION
For the foregoing reasons, the October 11, 2017 interlocutory judgment of the Greenup Circuit Court terminating the parental rights of Mother and Father as to Child is affirmed.
ALL CONCUR.

Kentucky Revised Statutes.

Mother's testimony included the following:
Mother's counsel: Was there ever a period of time when your whereabouts were not known?
Mother: There were.
Mother's counsel: And when was that?
Mother: That was from January until March of this year [2017].
Mother's counsel: And where were you?
Mother: I was in Lexington.... I ended up being considered a missing person. I didn't know that my mom had filed a missing person report during this time.
(Videotape Transcript (VT) 9/6/17; 4:19:23).

Because the family court's judgment under review did not dispose of all the issues as to all the parties before it (i.e. , no judgment of adoption has been entered), it is not a final and appealable judgment as defined by Kentucky Rules of Civil Procedure (CR) 54.01. However, it is an interlocutory judgment because it decides the entirety of the issue of the termination of Mother's and Father's parental rights. See C.M.C. v. A.L.W. , 180 S.W.3d 485, 488-89 (Ky. App. 2005) (stating "a petition seeking adoption of a child against the child's biological parent's wishes is a discrete subset of involuntary termination of parental rights cases" and treating the denial of the petition to terminate parental rights as a separate appealable issue from the adoption itself). As such, it was capable of being made final pursuant to CR 54.02(1). When the family court added to the order terminating those parental rights that "[t]his is a final and appealable order for which there is no just cause for delay[,]" it became a judgment properly reviewable by this Court.

This is an erroneous idea that does not affect our review. KRS 199.570(1) authorizes parties and their counsel access to the report once filed with the court. The statute has not changed in this regard since our highest court addressed the issue of access in 1966. See 1956 Ky. Acts ch. 157 (HB 362) § 16. In Warner v. Ward , the Court said, "[T]he report was filed on February 24, 1965. The hearing was held on March 3, 1965, at which time the trial court stated that [t]he report was in the record. Hence it is clear that it was available for inspection by the parties and their attorneys. Cf. KRS 199.570(1). It is but two pages long, and could have been read and digested without delay." 401 S.W.2d 62, 64 (Ky. 1966). It was not improper for Mother's counsel to view the report.

The family court does not cite specific statutory authority but does use specific language found in KRS 199.502(1)(a), (e), and (g).

Kentucky Rules of Civil Procedure.

Although KRS 199.502 does not require clear and convincing evidence, the Due Process Clause does. This Court may have implied the reason for the heightened standard of KRS 199.502 is its express requirement in KRS 625.090. See P.C.C. v. C.M.C., Jr. , 297 S.W.3d 590, 592 (Ky. App. 2009) ("C bore the burden to prove by clear and convincing evidence that P had abandoned R for a period of not less than 90 days. KRS 625.090(2)(a) ; KRS 199.502(1)(a)."). However, we corrected that potential misimpression soon after to identify the correct constitutional source. See R.P., Jr. v. T.A.C. , 469 S.W.3d 425, 427 (Ky. App. 2015) ("to pass constitutional muster, the evidence supporting termination must be clear and convincing. [Santosky v. Kramer ,] 455 U.S. [745] at 769-70, 102 S.Ct. [1388] at 1403 [71 L.Ed.2d 599 (1982) ].").

KRS 199.500(4) says "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions of KRS 625.090 exist with respect to such child." KRS 199.500(4) (emphasis added; quoted from 1994 Ky. Acts ch. 242 (H.B. 191) § 6, amending KRS 199.500 as the statute reads, in this regard, today). Subsection (4) was enacted well before KRS 625.090 was amended in 1998 to add fact-finding requirements, but these additional requirements were not also added to Chapter 199. See 1998 Ky. Acts ch. 57 § 18 (adding the current section (1) of KRS 625.090 ). The termination of parental rights provisions attendant to an adoption remain distinct from parental rights terminations under Chapter 625. For example, "proceedings to involuntarily terminate parental rights can only be initiated by the Cabinet, any child-placing agency licensed by the Cabinet, any County or Commonwealth's Attorney, or a parent. KRS 625.050(3)." R.M. v. R.B. , 281 S.W.3d 293, 296 (Ky. App. 2009) (emphasis added). Persons seeking to adopt a child proceed under Chapter 199. Neither KRS 199.500(4) nor KRS 199.502(1) has ever been amended to require satisfaction of more than one condition to terminate parental rights. Today, as before amendments to KRS 625.090 adding additional elements, both KRS 199.500(4) and KRS 199.502(1) require clear and convincing evidence of only one of the respective identified provisions ("any of the provisions of KRS 625.090" for KRS 199.500(4), and any of the conditions contained in KRS 199.502(1) for that statute). KRS 199.502 makes no reference to Chapter 625, Chapter 620, or Chapter 600 of the Kentucky Revised Statutes or their standards. Notably, because of KRS 199.520(1) the family court must find "that the best interest of the child will be promoted by the adoption ...." (emphasis added).

See footnote 2, supra , quoting Mother's testimony establishing she was not available for a statement.

The family court suggested to Mother's counsel: "If you could prove that the report somehow said something negative about your client which in fact wasn't true, maybe we could get there" - i.e. , questioning the report's preparer regarding termination of parental rights. (VT 9/6/2017; 3:12:20).

KRS 199.502(2) anticipates the family court's entry of a single unified final judgment. It states that "[u]pon the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision either: (a) Granting the adoption without the biological parent's consent; or (b) Dismissing the adoption petition, and stating whether the child shall be returned to the biological parent or the child's custody granted to the state, another agency, or the petitioner." The Supreme Court suggests the same in Moore v. Asente where it cites Wright v. Howard , 711 S.W.2d 492, 494 (Ky. App. 1986), for its holding that "a judgment of adoption in and of itself terminates any meaningful legal relationship between the adopted child and its non-consenting party defendant natural parent...."). 110 S.W.3d 336, 351 n.47 (Ky. 2003). The Court further noted: "Of course, unless a biological parent's parental rights have been previously terminated, see KRS 199.480(1)(b)(6), the biological parent or parents must be made a party defendant to the proceeding, KRS 199.480(1)(b), and a trial court may approve an adoption without the consent of the child's biological living parents only if the evidence supports the additional factual findings required by KRS 199.502." Id.

See footnote 2, supra.

Father, but not Mother, was asked to leave the residence where both were staying. Mother remained behind and, by her testimony, endured physical restraint and abuse by the remaining residents from January 2017 until March 2017. See citation to Videotape Transcript in footnote 2, supra. The portion of the testimony describing these abuses were excerpted in that footnote.

Father testified to the pending robbery charges in Fayette County. His conviction and incarceration occurred subsequently. Without taking judicial notice that would run afoul of the high standards and safeguards expressed in Marchese v. Aebersold , 530 S.W.3d 441, 446-48 (Ky. 2017), we simply note that on May 4, 2018, in Fayette Circuit Court, Father was "found guilty of ... Complicity Robbery, 1st degree [and] PFO-2nd deg" and was committed to the custody of the Kentucky Department of Corrections for a period of ten (10) years. Commonwealth v. [M.A.F. ], No. 17-CR-00487-002 (Fayette Cir. Ct. May 4, 2018) (order of commitment).