281 S.W.3d 293 (2009)
R.M., Husband, and R.M., Wife, Appellants,
v.
R.B., Natural Father; T.B., Natural Mother; and A.E.B., A Child, Appellees.
No. 2008-CA-001099-ME.
Court of Appeals of Kentucky.
February 27, 2009.
Jonathan R. Baker Stanford, KY, for appellants.
Donald A. Thomas, Liberty, KY, for appellee R.B., Natural Father.
Greg Dunn, Liberty, KY, for Guardian Ad Litem, appellee A.E.B., A Child.
*294 Before LAMBERT and TAYLOR, Judges; GRAVES,[1] Senior Judge.

OPINION
TAYLOR, Judge.
R.M. and R.M., husband and wife, (hereinafter appellants) bring this appeal from an order of the Casey Circuit Court entered March 26, 2008, denying the termination of parental rights and adoption sought by appellants as concerns A.E.B, an infant child. For the reasons stated below, we affirm.
A.E.B. was born on July 6, 2005. Her natural parents are T.B.,[2] her mother, and R.B. her father. R.M. is the maternal uncle of A.E.B. and his wife is A.E.B.'s aunt by marriage.
The sequence of events after A.E.B.'s birth is disputed. During the first month of birth, appellants babysat for A.E.B. on a daily basis. Appellants contend that shortly thereafter they assumed complete responsibility for A.E.B.'s care. R.B. contends that he and T.B. utilized appellants' babysitting assistance on a less frequent basis, primarily when R.B. was out of town for work-related matters during the first ten months after birth. Appellants counter that shortly after A.E.B.'s birth, their relationship with A.E.B. was more custodial and permanent in nature than mere babysitting. Regardless of the disputed facts regarding appellants' custodial control over the child, there is no dispute that both R.B. and T.B. have substantial personal issues and problems that interfered with their parenting duties of A.E.B. after her birth. In May 2006, the Cabinet for Health and Family Services (Cabinet) initiated a neglect action in the Casey District Court against T.B. and R.B. pursuant to KRS Chapter 620. During the pendency of this proceeding, A.E.B. was removed from T.B. and R.B. and placed in the temporary custody of appellants. The neglect action was subsequently transferred to the Pulaski Family Court in February 2007.
After conducting an evidentiary hearing, the Pulaski Family Court entered an order on June 11, 2007, granting appellants permanent custody of A.E.B. That order was further amended by order entered July 9, 2007. However, the Pulaski Family Court orders reflect that R.B. was not present at the evidentiary hearing due to his incarceration at the time of the hearing. The Pulaski County orders also only reference actions taken against T.B., not R.B.
On August 31, 2007, appellants filed a petition for adoption in the Casey Circuit Court seeking to adopt A.E.B. Included as an exhibit to the petition for adoption was an executed voluntary consent to the adoption on behalf of T.B. R.B. did not consent to the adoption. Thus, his parental rights were required to be terminated in accordance with Kentucky Revised Statutes (KRS) 199.502, which relates to a petition for adoption where the consent of a biological parent is not obtained. The adoption petition subsequently came before the Casey Circuit Court for an evidentiary hearing on March 7, 2008. At the conclusion of the hearing, the circuit court denied adoption of the child A.E.B. by appellants and *295 further denied the involuntary termination of the parental rights of R.B. The written order was entered March 26, 2008.
Appellants timely filed a motion to alter, amend or vacate the order entered by the Casey Circuit Court on March 26, 2008. The motion was denied by order entered May 13, 2008. This appeal follows.
The primary issues raised in this appeal by appellants relate to the failure of the Casey Circuit Court to terminate the parental rights of R.B., which was necessary for them to adopt A.E.B. Specifically, appellants argue that the order of the Pulaski Family Court that A.E.B. had been neglected as defined in KRS 600.020, which is the necessary statutory definition utilized in KRS Chapter 620 to support a neglect petition, warranted a termination of R.B.'s parental rights in accordance with KRS 625.090(2). KRS Chapter 625 pertains exclusively to the involuntary termination of parental rights. It is the primary legal basis argued by appellants in this appeal.
However, we note at the outset of our analysis that this case was not initiated as a termination of parental rights action but rather as an adoption proceeding under KRS Chapter 199. In fact, the caption for the pleading initiating this action is styled "Petition for Adoption," and there is no reference whatsoever in this petition to the termination of R.B.'s parental rights. Nonetheless, KRS 199.502 sets out various conditions for which an adoption may be permitted without the consent of a child's biological living parent, which effectively results in the termination of parental rights. These conditions are the same conditions set forth in KRS 625.090(2) which require clear and convincing evidence to prove whether one of the conditions therein supports the termination of parental rights. KRS 199.502 reads as follows:
(1) Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:
(a) That the parent has abandoned the child for a period of not less than ninety (90) days;
(b) That the parent had inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;
(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;
(d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to a child named in the present adoption proceeding;
(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
(f) That the parent has caused or allowed the child to be sexually abused or exploited;
(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably *296 necessary and available for the child's wellbeing and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;
(h) That:
1. The parent's parental rights to another child have been involuntarily terminated;
2. The child named in the present adoption proceeding was born subsequent to or during the pendency of the previous termination; and
3. The condition or factor which was the basis for the previous termination finding has not been corrected; or
(i) That the parent has been convicted in a criminal proceeding of having caused or contributed to the death of another child as a result of physical or sexual abuse or neglect.
(2) Upon the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision either:
(a) Granting the adoption without the biological parent's consent; or
(b) Dismissing the adoption petition, and stating whether the child shall be returned to the biological parent or the child's custody granted to the state, another agency, or the petitioner.
It is obvious that the reason appellants did not file a petition for involuntary termination of parental rights under KRS 625 is because they statutorily do not have standing to initiate such proceedings under KRS 625.050. Under that statute, proceedings to involuntarily terminate parental rights can only be initiated by the Cabinet, any child-placing agency licensed by the Cabinet, any County or Commonwealth's Attorney, or a parent. KRS 625.050(3).
Notwithstanding the foregoing, the circuit court conducted an evidentiary hearing and essentially permitted appellants to present their case for the involuntary termination of R.B.'s parental rights under KRS Chapter 625. We find no error in the circuit court proceeding in this manner since, as we noted, the substantial provisions of KRS 625.090(2) pertaining to the involuntary termination of parental rights are identical to KRS 199.502(1).
Pursuant to Kentucky Rules of Civil Procedure (CR) 52.01, at the conclusion of the evidentiary hearing, the circuit court made specific findings and conclusions, including the following:
The Court finds that [appellants] have failed to prove by clear and convincing evidence pursuant to KRS 625.090 that [R.B.] has abused or neglected [A.E.B.] pursuant to KRS 600.020(1) or that termination of his parental rights is in the best interest of [A.E.B.]. The Court has also considered all of the factors set forth in KRS 625.090(3) subsections a, b, c, d, e and f.
Customarily, we would apply the clearly erroneous standard of review to findings made by the circuit court under CR 52.01. Similarly, in a termination of parental rights action under KRS Chapter 625, our review would include a determination of whether there was clear and convincing evidence to support any of the grounds that justify the termination of parental rights. KRS 625.090(2). However, we do not reach this level of review in this case, and we affirm the circuit court based upon different grounds than those relied *297 upon by the circuit court. O'Neal v. O'Neal, 122 S.W.3d 588 (Ky.App.2002).
As previously noted, this is an adoption case and thus is governed in its entirety by KRS Chapter 199. Provisions of KRS Chapter 625 are applicable only as permitted by KRS 199.500(4), and as specifically enumerated in KRS 199.502. Because adoption is a statutory right, Kentucky Courts require strict compliance with the statutory procedures to protect the rights of natural parents. Day v. Day, 937 S.W.2d 717 (Ky.1997). In Day, the Kentucky Supreme Court, in addressing the strict construction of the adoption statutes, stated the following:
Since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents. ... [A]doption only exists as a right bestowed by statute and, furthermore, that there must be strict compliance with the adoption statutes. The law of adoption is in derogation of the common law. Nothing can be assumed, presumed, or inferred and what is not found in the statute is a matter for the legislature to supply and not the courts. (Citations omitted.)
Id. at 719.
In reviewing the pleadings and record of this case, we conclude that several statutory procedures were not followed as required by the adoption statutes. First, KRS 199.502(1) requires that where a living parent has not consented to the adoption, it must be pleaded and proved that at least one of the conditions stated therein exists with respect to the child. Again, these are the same conditions to support the involuntary termination of parental rights as set forth in KRS 625.090. In closely reviewing the petition for adoption in this case, there are absolutely no allegations set forth therein against R.B. which would constitute a condition sufficient to terminate his parental rights as part of the adoption in this case.
Second, KRS 199.510 requires the Cabinet, upon the filing of the petition, to be notified thereof and to commence an investigation of the proposed adoption and submit a report to the court. KRS 199.510 specifically reads, in part, as follows:
(1) Upon filing a petition for the adoption of a minor child, the clerk of the court shall forward two (2) copies of the petition to the cabinet. The cabinet, or any person, agency or institution designated by it or the court shall, to the extent of available facilities, investigate and report in writing to the court:
(a) Whether the contents of the petition required by KRS 199.490 are true;
(b) Whether the proposed adoptive parents are financially able and morally fit to have the care, custody and training of the child; and
(c) Whether the adoption is to the best interest of the child and the child is suitable for adoption.
(2) The report of the cabinet or the designated person, agency or institution shall be filed with the court as soon as practicable but not later than ninety (90) days from the placement of the child or ninety (90) days after the filing date of the petition, whichever is longer. ...
The record in this case reflects that the clerk of the Casey Circuit Court forwarded two copies of the petition to the Cabinet as required. However, upon thoroughly reviewing the record, this Court cannot find that the Cabinet filed the Report as required therein. Likewise, the circuit court made no reference to the *298 Report in its order denying the adoption. This Report is essential to support the appellants' claims that the adoption was in the best interest of A.E.B. KRS 199.515 mandates that the Report be filed before the hearing may be conducted. Since there was no Report filed by the Cabinet, the circuit court technically should not have conducted an evidentiary hearing. Notwithstanding, at the hearing appellants called three representatives from the Cabinet as witnesses in support of the petition. However, all three witnesses testified regarding the neglect case in Pulaski Family Court. As we noted previously, R.B. did not even participate in that proceeding due to his incarceration. Incarceration alone is not a ground for the termination of one's parental rights. M.E.C. v. Com., Cabinet for Health and Family Servs., 254 S.W.3d 846 (Ky.App.2008). More importantly, none of the Cabinet's witnesses testified in support of the adoption nor did they testify that they had investigated the adoption pursuant to KRS 199.510. Without the Cabinet's Report, the circuit court could not grant the adoption as a matter of law.
Although the circuit court erroneously conducted a hearing in this case and applied the provisions of KRS 625.090 which otherwise are not applicable to this case for the reasons previously set out, we nonetheless affirm the order denying the adoption and termination of R.B.'s parental rights given that the record clearly reflects that the proper result was reached in this case at this time. Appellants failed to strictly comply with the adoption statutes as required by law. In other words, the circuit court reached the right result for the wrong reasons which we affirm. However, this opinion shall not be construed as prohibiting appellants from filing a subsequent petition that strictly complies with the adoption statutes as outlined herein.
For the foregoing reasons, the order of the Casey Circuit Court is affirmed.
ALL CONCUR.
NOTES
[1] Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.
[2] T.B., the natural mother of A.E.B., an infant child, filed a voluntary consent in the action below for the adoption of A.E.B. by appellants. Upon entry of the adoption order, T.B.'s parental rights would have been terminated in accordance with KRS 199.500. T.B. has been named as a party to this appeal but has not participated in the appeal.