**J.R.A., Appellant,**

v.

**G.D.A., Appellee.**

**No. 2009–CA–001709–ME.**

Court of Appeals of Kentucky.

June 11, 2010.

David S. Stevenson, Louisville, KY, for appellant.

Barbara A. Sullivan, Louisville, KY, for appellee.

Before CLAYTON, TAYLOR, and THOMPSON, Judges.

*OPINION*

TAYLOR, Judge:

J.R.A. brings this appeal from an August 19, 2009, Order of the Jefferson Circuit Court, Family Court Division, (family court) adjudicating him the legal father of D.A.S. We reverse and remand.

On September 21, 2002, appellee married her first husband, S.L.S. Three days later, appellee gave birth to a daughter, D.A.S. At that time, D.A.S. took the last name of S.L.S. Appellee and S.L.S. were divorced by decree of dissolution of marriage entered in the family court on July 29, 2003. The decree makes no reference to any children of the marriage.[1]

Some three years later, on May 1, 2006, appellee married appellant. At the time of the parties' marriage, appellee's daughter, D.A.S., was three years old. On March 16, 2007, appellant and appellee executed and filed with the State Registrar of Vital Statistics a Declaration of Paternity pursuant to Kentucky Revised Statutes (KRS) 213.046.[2] In so doing, both parties signed an affidavit stating that appellant was the natural or biological father of D.A.S. Pur-

---

1. The July 29, 2003, Decree of Dissolution of Marriage made no reference to any children being born of the marriage. The decree did incorporate a Property Settlement Agreement, but the record on appeal is devoid of a copy of said agreement. However, appellee testified that S.L.S. was not the biological father of D.A.S.

2. Although not relevant for purposes of this appeal, we have considerable doubt whether this statute is applicable, or was otherwise properly utilized to determine paternity by the family court.

suant to the declaration, D.A.S.'s last name was changed to that of appellant.

On April 13, 2009, appellant initiated the instant action by filing a Petition for Dissolution of Marriage in the family court. Thereafter, appellant filed a motion seeking "a hearing to Determine Petitioner's Paternity Rights and Obligations." Therein, appellant averred that he was not the biological father of D.A.S. Appellant further asserted that both he and appellee were aware that he was not the biological father when executing the Declaration of Paternity in March 2007. Appellant asserts that he and appellee only executed and filed the Declaration of Paternity to obtain insurance coverage for D.A.S. through his employer.

In response to appellant's motion, appellee admitted that appellant was not D.A.S.'s biological father. However, appellee claimed that appellant should be estopped from denying parentage and claimed that appellee "assumed a parental relationship with the child." Appellee also maintained that appellant held himself out as D.A.S.'s father throughout the marriage and continued to act as D.A.S.'s father after the parties' separated.

Following a hearing, the family court entered an order on August 19, 2009. Therein, the court concluded that appellant was equitably estopped from denying his paternity of D.A.S. and that appellant was D.A.S.'s "father and shall have all of the rights and responsibilities of a natural parent." In so concluding, the court reasoned:

> A child born during a marriage is presumed to be the child of the husband and wife. Ky.Rev.Stat. Ann. § 406.011. Therefore, Kentucky law would generally presume that [D.A.S.] is the child of [appellee] and her first husband. However, the presumption of paternity is one that may be rebutted. In this case, the presumption of paternity was rebutted when the parties signed affidavits stating that [appellant] is [D.A.S.'s] father and changing her surname from [S.] to [A.] The only issue remaining is whether [appellant] can overcome the presumption that he created pursuant to KRS 406.021(4) when he and [appellee] signed affidavits swearing that he is [D.A.S.'s] father.
>
> Since March 16, 2007[,] when [appellant] swore that he is [D.A.S.'s] father, he has held himself out to be her father. [Appellant] introduced himself to people as [D.A.S.'s] father and introduced her to people as his daughter. [D.A.S.] calls [appellant] "daddy" and has never referred to anyone else as "daddy." [Appellant] went to most of [D.A.S.'s] doctor's appointments and went to her soccer practices and games. [Appellant] was involved in [D.A.S.'s] education. [Appellant] acknowledged that [D.A.S.] has depended on him emotionally and financially as a daughter depends on a father. [Appellant] further acknowledged that he was aware that he would be held financially responsible for [D.A.S.] when he signed the affidavit declaring his paternity. [Appellee] testified that she believes [D.A.S.] would be very upset if she lost her relationship with [appellant] and that [D.A.S.] does not remember a time when [appellant] was not in her life.
>
> Kentucky case law has recognized that the doctrine of equitable estoppel may be applied to prevent a party who has held himself as a child's father from later denying paternity and terminating the parent-child relationship. In the case of *S.R.D[.] v. T.L.B.*, where the husband had represented to the child that he was her father despite knowledge that he might not be the father, the child was unaware that the husband may

not be her father, the husband had acted with the intention that the child consider him to be her father, and the child relied on his conduct to her detriment, the Kentucky Court of Appeals found that the husband could not be relieved of his parental obligation. *S.R.D. v. T.L.B.*, 174 S.W.3d 502, 509 (Ky.App.2005). It has been noted by the Kentucky Court of Appeals that the doctrine of paternity by estoppel was employed in the case of *S.R.D. v. T.L.B.* in order "to preserve the relationship (both emotional and financial) between the child and the only father she had ever known." *Boone v. Ballinger*, 228 S.W.3d 1, 12 (Ky.App. 2007).

In this case, [appellant] has, through his actions, represented to [D.A.S.] that he is her father. Despite the testimony by both parties that [D.A.S.] is aware that [appellant] is not her biological father, the Court finds that based on her young age; [D.A.S.] is unaware that biology would mean that [appellant] may one day terminate the father-daughter relationship. The Court further finds that despite [appellant]'s testimony that he signed the affidavit declaring his paternity of [D.A.S.] only so that he could cover her on his health insurance, [appellant] acted with the intention of [D.A.S.] considering him as her father by signing said affidavit, allowing her to call him "daddy," introducing himself as [D.A.S.'s] father and [D.A.S.] as his daughter, and by attending regular doctor visits as well as soccer practice and games. [D.A.S.] did rely on [appellant]'s conduct to her determinant, which he acknowledged in his testimony when he stated that [D.A.S.] has relied on him both emotionally and financially.

[Appellant] is the only father that [D.A.S.] has ever known, and the Court will not allow [appellant] to deny the responsibility that he willingly and knowingly undertook by signing the affidavit of paternity simply because his relationship with [D.A.S.'s] mother ended. To allow [appellant] to deny this responsibility would pose potentially serious ramifications for [D.A.S.]. . . .

. . . .

. . . For the foregoing reasons, the Court finds that [appellant] created a presumption of paternity pursuant to KRS 406.021(4) when he signed the affidavit declaring that he is [D.A.S.'s] father. Based on the doctrine of paternity by estoppel set forth in *S.R.D. v. T.L.B.*, the Court concludes that [appellant] cannot overcome the presumption that he is [D.A.S.'s] father and cannot deny his obligations toward her. [Appellant] is [D.A.S.'s] father and therefore has all of the rights and responsibilities that any natural parent has.

This appeal follows.

■ Appellant contends that the family court erred by concluding that he was equitably estopped from denying paternity of D.A.S. For the reasons hereinafter stated, we agree.

The doctrine of paternity by estoppel was recently recognized in this Commonwealth in the case of *S.R.D. v. T.L.B.*, 174 S.W.3d 502 (Ky.App.2005). Therein, S.D. was married to T.B. when T.B. gave birth to a child. During the marriage, T.B. "threatened and intimated" to S.D. that he was not the biological father of the child; nevertheless, S.D. conducted himself as the child's father. *S.R.D.*, 174 S.W.3d at 503. Thereafter, the parties divorced, and S.D. was granted joint custody of the child. Some six years later, the parties undertook a D.N.A. test, and it was revealed that S.D. was not the child's biological father. S.D. then sought to discontinue his child support payments but also sought

to continue visitation and his parental relationship with the child.

Applying the doctrine of paternity by estoppel, the Court held that S.D. was estopped from denying paternity and that S.D. was the child's legal father:

> The factors relevant to equitable estoppel apply to this case. S.D. represented to [the child] that he was her father, even though he was aware this representation may be a biological fiction; [the child] was unaware of this fact; S.D. acted with the intention that [the child] would consider him as her father; and [the child] relied upon S.D.'s conduct to her detriment. Simply put, S.D. made a material misrepresentation to [the child], upon which [the child] relied, to [the child]'s detriment and prejudice.
>
> . . . .
>
> We must disagree with that contention. The facts of this case ... indicate that S.D.'s conduct towards [the child]-i.e., continuing his role as her father, even though he had knowledge he may not be-effectively foreclosed [the child] from obtaining support from her natural father. Had S.D. chosen to conduct a paternity test at the time he first learned in 1997 that paternity was questionable, our conclusion may have differed. In that situation, [the child] would have had the opportunity to learn the identity of her natural father and, perhaps, to form a bond with him. But, as it stands, because S.D. has continuously held himself out as [the child]'s father since the child's birth, he has prevented [the child] from having a relationship, financial or otherwise, with her natural father. . . .

*Id.* at 508–510 (footnote omitted). Even though S.D. was not the child's natural or biological father, the Court recognized that he was, nonetheless, the child's legal father.[3] *Id.* at 508. To apply the doctrine of paternity by estoppel, the Court outlined the following factors that must be present:

> (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

*Id.* at 506 (footnote omitted).

■■■ We think the facts of this case are clearly distinguishable from those in *S.R.D.* First, unlike the relations in *S.R.D.*, D.A.S. was not born during the marriage so there existed no presumption of paternity under KRS 406.011. *See Boone v. Ballinger*, 228 S.W.3d 1 (Ky.App. 2007). Second, unlike the child in *S.R.D.*, it is undisputed that D.A.S. knew that appellant was not her biological or natural father. This is a most critical distinguishing factor. Under the doctrine of paternity by estoppel, the true facts as to paternity must be unknown to the child. *S.R.D.*, 174 S.W.3d 502. Such ignorance is necessary in order for the child's reliance to be reasonable. *Id.*

Additionally, *S.R.D.* should not be so broadly interpreted as holding that every male individual who acts as a father to a child will be considered that child's legal father. More is required under *S.R.D.*; particularly, such acts must constitute a "material misrepresentation." *S.R.D.*, 174 S.W.3d at 508. While appellant may have

---

3. The Court defined "legal father" as "[t]he man recognized by law as the male parent of a child." *S.R.D. v. T.L.B.*, 174 S.W.3d 502, 508 (Ky.App.2005)(quoting Black's Law Dictionary (8th ed. 2004)).

acted as D.A.S.'s natural father, D.A.S., as well as appellant and appellee, knew that he was not; consequently, appellant made no material misrepresentation to D.A.S. For these reasons, the doctrine of paternity by estoppel is not applicable in this case.

This leads our review to a determination of what appellant's legal status was with D.A.S. at the time of the marriage and whether that status was legally altered during the marriage. At best, at the time of the marriage, appellant's status with the child was one of step-father. Shortly thereafter, appellant signed an affidavit of paternity pursuant to KRS 213.046. Under KRS 406.021, this created a rebuttable presumption of paternity. However, appellant has acknowledged that this sworn affidavit was false, which appellee has, likewise, acknowledged. Since both parties admitted that appellant was not D.A.S.'s biological father, the presumption of paternity was clearly rebutted.

Under the facts of this case, based upon our review of applicable law, the only method by which a step-parent may acquire the legal status of parent with a biological child of his spouse is through adoption as set forth in KRS 199.470, *et seq.* Adoption is a statutory right that requires strict compliance with the statutory proceedings to protect the rights of natural parents. *R.M. v. R.B.*, 281 S.W.3d 293 (Ky.App.2009). Inherent in these procedures, which is most applicable here, is the termination of parental rights of the natural or biological father pursuant to KRS 199.502. In this case, none of these events occurred that were necessary for appellant to establish a legal relationship as the father of D.A.S.

Accordingly, we hold the circuit court erred by equitably estopping appellant from denying his paternity and by concluding that appellant was the legal father of D.A.S. Any remaining arguments of appellant are moot.

For the foregoing reasons, the Order of the Jefferson Circuit Court, Family Court Division, is reversed and remanded for proceedings consistent with this opinion.

ALL CONCUR.