RENDERED: NOVEMBER 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0376-ME

R.H.                                                                       APPELLANT

v.

APPEAL FROM GREENUP FAMILY COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 23-AD-00008

C.G.; COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY SERVICES;
D.G.; G.P.N.P., A MINOR CHILD;
AND J.P.                                                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

CALDWELL, JUDGE: R.H. ("Mother") appeals from orders of the Greenup

Family Court granting petitions for adoption without her consent, as living,

biological mother. We affirm the family court.

**FACTS**

Appellant, R.H. ("Mother"), is the biological mother of G.P.N.P. ("Child"). J.P. ("Father") is the biological father. Appellee, C.G. ("Aunt") is Father's sibling, co-Appellee D.G. ("Uncle") is husband to Aunt. Child has been in the care of Aunt and Uncle since leaving the hospital three days after birth, in August 2021.

Mother has an extensive history of drug abuse, beginning when she was still a teenager. Child was Mother's fifth birth. Mother's oldest three children were adopted by her own mother and stepfather, with her respective parental rights terminated. The fourth-born child is in the custody of Mother's paternal grandmother. A sixth child was born to Mother in September of 2023; this was the first Mother brought home from the hospital or to be in her primary care.

Aunt and Uncle filed a Verified Petition for Adoption, initiating the underlying action in Greenup County Family Court, on February 28, 2023.[1] On April 4, 2023, a confidential report was filed with the family court by the Cabinet for Health and Family Services ("CHFS"). Mother filed an answer on April 22, 2023. A final hearing in the matter was originally scheduled for July 11, 2023.

---

[1] Previously, Aunt and Uncle had been awarded custody of Child in a CI action, and permanent placement of Child in a juvenile action. In the latter, Mother stipulated to have neglected Child.

Mother filed a motion to continue on July 5, 2023. Therein, she asserted she was hospitalized and receiving IV antibiotics 24 hours per day. The motion was granted and the hearing rescheduled.

The final adoption hearing finally occurred on February 6, 2024. The guardian *ad litem* recommended adoption of Child by Aunt and Uncle, as well as termination of Mother's parental rights. Testimony was heard from Aunt, Mother, Mother's counselor, Mother's paternal grandmother, and Mother's maternal grandmother.

At the hearing, Mother presented testimony indicating she had demonstrated efforts to overcome her drug addiction and improve her parenting. A mental therapist who treated Mother testified. He said Mother began seeing him on September 13, 2023, pursuant to her participation in a medication-assisted treatment program at OVP Health in Ashland, Kentucky. He indicated drug screen results he had reviewed were appropriate and that he had observed an improvement in her over the months of his treatment. The mental therapist indicated Mother was doing well and complying with her treatment.

Mother's paternal grandmother also testified. She affirmed having custody of one of Mother's children, who was five years old on the date of the hearing. She testified she had begun allowing Mother to visit this child approximately a year prior. She testified Mother's condition and efforts at

sobriety had improved during that time; she described Mother as doing well in taking care of her new baby. Mother's maternal grandmother also testified. She also described a recent improvement in Mother's condition, as well as efforts in parenting and sobriety.

At the time of her testimony, Mother had not seen Child in more than a year. The last visitation attempted had been set up by Aunt on the Child's first birthday, in August of 2022. Aunt testified she had not heard from Mother for quite some time prior to this occasion, which she attributed to Mother's continuing active addiction. Prior visitations which had occurred were sporadic, Aunt testified, as Mother would often disappear for months at a time, without requesting to see the Child.

At the attempted visit, Aunt drove to her grandmother's home, where Mother and Father were, so they together could see Child. When she was on her way, Aunt sent a message to let Mother and Father know; she did so again upon her arrival. Aunt sat in the driveway for an extended period waiting for either Mother, or Father, to come outside and see Child. However, neither did so. Aunt eventually left, believing Mother's condition from active addiction was the reason she did not come out to see Child. Aunt chose to cease communication with Mother at that point. Aunt testified she did so out of fear for the minor Child's safety, which she believed to be in danger if exposed to Mother while in a state of

active addiction. Aunt testified she was no longer in contact with Father and believed her brother continued to actively use drugs.

Aunt expressed doubt that Mother had ever demonstrated a period of sobriety that would render visitation appropriate. She conceded she had not returned text messages Mother had sent her. She testified she had consulted and relied upon the advice of her attorney and a CPS worker involved in the juvenile case in reaching the decision to ignore Mother's text messages.

Mother conceded that once, during the pendency of the adoption action, there had been a lapse in her sobriety. However, she insisted this had occurred because she had been abducted and involuntarily drugged by Father and his friends. Father, who is the biological father of Child and to Mother's sixth-born, did not file an appearance in the action and did not testify. All testimony indicated Father continued to live a lifestyle of active addiction. Aunt testified she had ceased contact with her brother as a result. Father's relationship with Mother was discussed on several instances.

Mother testified she had ceased all contact with Father. She conceded a lapse in her sobriety had occurred when she last saw Father in May of 2023. However, Mother said she had been abducted by Father and injected with drugs, against her will by Father and his friends. Mother's maternal grandmother had testified she had reported Mother missing in May of 2023, after she could not

locate her and worried for her safety. Mother testified she had reported this kidnapping to police but that jurisdictional issues had complicated any charges being filed.

Aunt's testimony had described encountering Mother and Father together on two occasions during May of 2023, one during the period Mother was reported missing. Aunt's testimony indicated her skepticism that Mother's drug use at this time was involuntary. Once, in early May of 2023, Aunt saw Mother and Father sitting in a car together, but otherwise alone, outside the home of Aunt and Father's grandmother.

Aunt testified she encountered the two outside her grandmother's home again in late May of 2023. This occurrence was during the period Mother was reported as a missing person. Aunt had gone to her grandmother's home in search of the two after learning from Uncle that he had recognized Mother and Father in a van he passed while driving. As both Mother and Father were reported as missing at the time, Uncle reported what he saw to Aunt. Prompted by this news, Aunt went to her grandmother's home and observed the van parked on the side street. She pulled up beside it and observed Mother inside.

Aunt testified that she told Mother she needed to contact her family, as they had reported her missing. Aunt described Mother's appearance as "pretty rough" and having disheveled hair and scabs over her body. Aunt testified that

Police arrived at the scene later the same day and that, in reaction to this, Mother transferred to the driver seat and attempted to flee the scene. Mother confirmed she had fled from the police, despite her having been abducted and wishing to escape from Father. She attributed her actions to the drugs she had taken involuntarily.

Mother was hospitalized for an extended period after this incident. Her testimony referenced a prior extended hospitalization incidental to intravenous drug use. Mother dated her discharge from this prior hospitalization to November of 2022, and referenced this as the onset of her sobriety, outside of the relapse in May of 2023.

Following the hearing's conclusion, three orders were contemporaneously entered by the trial court on February 8, 2024 − an Order Terminating Parental Rights which concerned Father, another Order Terminating Parental Rights which concerned Mother, and an Order of Adoption and Judgment. Mother timely filed a Motion to Alter, Amend, or Vacate which was denied by the family court. This appeal follows.

## STANDARDS OF REVIEW

Termination of parental rights is a very serious matter impacting significant constitutional rights; accordingly, the "utmost caution" is required and only when statutory requirements are clearly met should the family court terminate

-7-

parental rights. *M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846, 850 (Ky. App. 2008).

Generally, we review a family court's application of the law to the facts *de novo*. *K.H. v. Cabinet for Health and Family Services*, 358 S.W.3d 29, 31 (Ky. App. 2011). Questions of statutory interpretation – such as which statutes govern adoptions or terminations of parental rights – are also subject to *de novo* review, though we review evidentiary rulings for abuse of discretion. *A.F. v. L.B.*, 572 S.W.3d 64, 69 (Ky. App. 2019).

We review the family court's findings of fact under the clearly erroneous standard set forth in CR[2] 52.01, while keeping in mind those findings, when made in support of termination of parental rights, are constitutionally required to be supported by clear and convincing evidence. *A.F.*, 572 S.W.3d at 69-70 (citing *Santosky v. Kramer*, 455 U.S. 745, 747-48, 102 S. Ct. 1388, 1391-92, 71 L. Ed. 2d 599 (1982)).

Nonetheless, "trial courts are afforded a great deal of discretion in determining whether termination of parental rights is appropriate. A family court's termination of parental rights will be reversed only if it was clearly erroneous and not based upon clear and convincing evidence." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359-60 (Ky. 2022) (internal quotation marks, footnotes, and citations omitted).

---

[2] Kentucky Rules of Civil Procedure.

## ANALYSIS

**Any Error in the Family Court's Citations to KRS[3] 625.090, Without Reference to KRS 199.502, Was Harmless**

Mother argues the family court failed to make the required findings for an adoption without consent, as mandated by KRS 199.502. The family court's orders, Mother points out, contain no references to KRS 199.502. Rather, she says, the family court "instead applied KRS 625.090 in the Order Terminating Parental Rights."

As the matter was clearly an adoption action without parental consent, we agree with Mother that KRS 199.502 was the applicable statute. *See also* KRS 199.500(4). Furthermore, we agree with her that the adoption procedures, as set forth in KRS Chapter 199, require strict compliance. *R.M. v. R.B.*, 281 S.W.3d 293, 297 (Ky. App. 2009). Mother cites to our decision in *J.L.R. v. A.L.A.*, in her argument the adoption judgment is void for failure to comply with the proper adoption statute. 645 S.W.3d 63, 66 (Ky. App. 2022). However, under the facts at hand, we do not view our analysis there as providing support to Mother's position. As we found in *J.L.R.*, an argument closely paralleling Mother's here *was* addressed:

> [J.L.R.'s] first argument is essentially a conclusory statement that the family court erred in applying the statutory provisions of KRS 625.090 and that the

---

[3] Kentucky Revised Statutes.

> applicable statutes for adoption without consent are KRS 199.502 and KRS 199.520. We agree those are the applicable statutes. **The pertinent question is whether there was compliance with them**.

*J.L.R.*, 645 S.W.3d at 66 (emphasis added).

In addressing this question, we did, ultimately, detect a failure of statutory compliance on the part of the family court requiring remand in *J.L.R*. *Id*. at 70. Specifically, the family court had erroneously issued a judgment of termination rather than a judgment of adoption and had included the name of the birth parents in the judgment; both of these errors were in violation of KRS 199.520(1). *Id*. at 66-67. Here, the family court's Order of Adoption and Judgment makes no mention of Mother or Father by name. Furthermore, no specific error, in regard to KRS 199.520, is alleged or appears to have occurred.

It was the case in *J.L.R.*, as here, that no specific reference was made by the family court to KRS 199.502, only to KRS 625.090. *Id*. at 66. However, the record demonstrated the adoptive parents had pled and proven the requirements for adoption without consent, under KRS 199.502 (and KRS 199.500(4)). So, we found no reversible error in the family court's referring to KRS Chapter 625 – and not KRS Chapter 199 – standing alone. *Id*. at 68-69.

KRS 199.502(1) states in pertinent part:

> Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and

-10-

proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

. . . .

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

. . . .

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

Aunt and Uncle's Verified Petition for Adoption included the following paragraphs:

14. The grounds for this termination of parental rights as well as adoption are that [the biological parents have] abandoned the child for more than 90 days.

15. [The biological parents] have continuously and repeatedly failed to provide or have been substantially incapable of providing essential parental care and

-11-

protection for the child and that there is no reasonable expectation of improvement in parental care and protection.

16. That [the biological parents], for reasons other than poverty alone, have continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is not reasonable expectation of significant improvement in their conduct in the immediate foreseeable future, considering the age of the child.

In the Order Terminating Parental Rights, as to Mother, the family court found:

Pursuant to KRS 625.090(2)(a) the biological mother has by clear and convincing evidence abandoned and neglected the minor child for a period exceeding ninety (90) days. Moreover, it is apparent from her actions that she has a settled purpose to forego [her] parental duties and all parental claims to the child given that [she] has failed to provide any parental care for the minor child since her birth.

Moreover, the Court finds by clear and convincing evidence that KRS 625.090(1)(e) and KRS 625.090(1)(g) is [*sic*] also applicable in that [Mother] has continuously and repeatedly failed to provide and is incapable of providing essential parental care and protection for the child, essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being. There is additionally no reasonable expectation of significant improvement in the immediately foreseeable future. In making this finding, the court must look at the evidence presented to the court and the pattern of past behavior, and based upon this behavior, can only predict that his conduct would continue to be similar in the future. The Court has been

-12-

presented with no evidence to refute these reasonable future expectations.[4]

"KRS 199 encompasses KRS 625." *J.L.R.*, 645 S.W.3d at 65 (quoting *E.K. v. T.A.*, 572 S.W.3d 80, 83 (Ky. App. 2019)). KRS 199.500(4) allows for adoption without the consent of the biological living parents, where "it is pleaded and proved as a part of the adoption proceedings that any of the provisions of KRS 625.090 exist with respect to the child[.]"[5] Side-by-side examination demonstrates the required findings of parental unfitness in KRS 625.090(2)(a), (e), and (g) are directly mirrored in those of KRS 199.502(1)(a), (e), and (g). Accordingly, upon the pleadings and evidence at hand, the family court's incorrect or incomplete statutory references are not necessarily an indication of its failure to make the required findings under KRS 199.502.

We have previously acknowledged the mirroring statutory language in KRS 199.502(1) and KRS 625.090(2) requires that, in some respects, the determinations which must be made under the provisions also correlate. *See R.M.*, 281 S.W.3d at 296 (finding no error in family court's allowing parties seeking adoption without parental consent to present evidence relevant to obtaining

---

[4] We presume the family court intended to cite to KRS 625.090(2)(e) and (g), and that its citations to KRS 625.090(1)(e) and (g) are simply typographical errors. KRS 625.090(1) has no subdivisions nominated (e) or (g).

[5] Notwithstanding the specified exceptions to parental consent requirements in KRS 199.500(1).

-13-

involuntary termination of parental rights under KRS Chapter 625, given similarities between KRS 199.502(1) and KRS 625.090(2)). In reaching this conclusion, we provided guidance as to the interplay between involuntary termination of parental rights statutes in KRS Chapter 625 and the adoption statutes in KRS Chapter 199, noting the "[p]rovisions of KRS Chapter 625 are applicable only as permitted by KRS 199.500(4), and as specifically enumerated in KRS 199.502." *R.M.*, 281 S.W.3d at 297.

With this in mind, the extent of the family court's error may be fairly described as referencing KRS 625.090, without an additional reference to KRS Chapter 199. However, when examining the family court's substantive findings, language which tracks that contained in KRS 199.502(1)(a), (e), and (g) was specifically invoked, despite any incomplete or mistaken citations to KRS 625.090. Put another way, Mother has demonstrated only that the family court failed to cite to KRS 199.502(1)(a), (e), or (g). An examination of the family court's orders, however, demonstrates no failure to make the findings contained in KRS 199.502(1)(a), (e), or (g). Mother has demonstrated no absence of strict compliance with the substantive procedural requirements of KRS 199.502, only incorrect citation; she, furthermore, demonstrates no prejudice which occurred from the error. On the facts at hand, any error was harmless.

The family court found abandonment for more than 90 days, failure or inability to provide essential parental care, and repeated or continuous failure or inability to provide necessities. In doing so, the family court found at least one specified condition to permit considering granting adoption without consent required by KRS 199.502 – by clear and convincing evidence – pled in the adoption petition.

While explicit reference to the correct governing statute is certainly the preferred practice, the court orders here demonstrate the family court making the required findings to permit consideration of whether to grant the adoption without Mother's consent. KRS 199.502(1). *See also* KRS 199.500(4). In short, the family court's failure to explicitly reference KRS 199.502 does not merit relief under these facts. *Cf. A.K.H. v. J.D.C.*, 619 S.W.3d 425, 432 (Ky. App. 2021) (reversing denial of stepfather's petition for adoption without consent as family court's error in requiring stepfather to establish all requirements in KRS 625.090 rather than simply meeting requirements of KRS 199.502 prejudiced stepfather). There is no indication Mother's substantial rights were adversely affected by this error. The family court's failure to cite KRS 199.502, and the incorrect or unnecessary citations to KRS 625.090, were harmless. *See* CR 61.01.

Mother additionally argues it was reversible error for the family court to issue three separate orders. We disagree. We have previously stated it is

-15-

*unnecessary* for the trial court to issue separate orders terminating parental rights and granting the adoption. *C.J. v. M.S.*, 572 S.W.3d 492, 497 (Ky. App. 2019). However, on review, "we view the judgment of adoption and order terminating parental rights as being one document that comprises the judgment. The effect of the judgment is the adoption of the child at issue. As such, we review the judgment for compliance with the adoption statutes." *Id.* (internal quotation marks and citation omitted). Where judgments of termination of parental rights and adoption are both entered, we treat them as one judgment and review for compliance with the adoption statutes. *Id.* at 497 (citing *Wright v. Howard*, 711 S.W.2d 492, 494 (Ky. App. 1986)).

**Substantial Evidence Supports the Family Court's Findings**

Mother also argues the family court's findings were not supported by the evidence. She essentially reargues her case, specifically, on the issues of abandonment and a reasonable expectation of improvement. As our Supreme Court has directed, "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). *See also* CR 52.01. Given the deference we must accord to the family court's judgments about the credibility of witnesses and the weight of the evidence, we cannot disturb its factual findings as they are supported by substantial evidence and therefore not clearly erroneous.

-16-

The family court set forth in detail findings of fact concerning failure or inability to provide essential parental care.  *See* KRS 199.502(1)(e); KRS 625.090(2)(e).  It found Mother had not contributed anything financially toward Child.  The family court acknowledged the testimony regarding Mother's attempts to text message Aunt about visiting Child and for her family to provide clothing and noted "[t]ext messages produced show there has been no text messages since December 2022."  The family court noted her continued unemployment and reliance upon government assistance and family for income.  The family court also took notice of the juvenile action, with a stipulation of neglect by Mother, and the circuit action, with no timesharing granted.

> It is clear to the Court that neither biological parent has provided any parental care for the minor child since her birth.  The biological mother has appeared to enter treatment but only entered such treatment several months after the filing of the Petition for Adoption.  Both parents have abandoned the child and failed to provide financially.  This is all supported by the testimony of the Petitioner and by [Mother] herself.

In the context of an adoption without parental consent, "abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child."  *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983).  Furthermore, "[s]eparation to constitute abandonment and neglect must be wilfull and harsh."  *Kantorowicz v. Reams*, 332 S.W.2d 269, 271-72 (Ky. 1959).  A finding of abandonment may not be based

-17-

upon a "mere failure to exercise visitation" because "a vast distinction exists between absence and indifference." *S.B.B. v. J.W.B.*, 304 S.W.3d 712, 717 (Ky. App. 2010).

Here, Mother argues she did not abandon the Child because Aunt thwarted her attempts to visit with Child, highlighting the testimony where Aunt conceded she had ignored Mother's text messages. This Court has, under different circumstances, found that abandonment was not present when a custodial parent systematically thwarted and consistently frustrated the other parent's attempts to visit with a child. *P.C.C. v. C.M.C., Jr.*, 297 S.W.3d 590, 592-93 (Ky. App. 2009). However, Aunt and Uncle argue the case aligns more closely with our decision in *R.P., Jr. v. T.A.C.*, 469 S.W. 3d 425, 427 (Ky. App. 2015). We agree with Aunt and Uncle.

The circumstances here are distinct from a scenario where deliberate and systematic ploys to keep the natural parent and child apart in order to avoid visitation. *See P.C.C.*, 297 S.W.3d at 592. Mother's own testimony indicated her requests to see Child were sporadic, even in the period Mother was texting such requests. Aunt indicated months would go by without any communication or effort to see Child by Mother. Aunt additionally testified of making efforts to keep Mother informed and involved with Child but Mother's drug use consistently took precedence. While Mother focuses upon a period of a few months during

-18-

which Aunt left her text messages unanswered, Mother's paternal grandmother conceded she would not allow Mother to see the child she had custody of during this same period as a result of Mother's behavior incidental to her drug use.

As with *R.P., Jr. v. T.A.C.*, Mother "merely argues that [her] testimony about [Aunt's] conduct outweighs [her] admissions about [her] own behavior. We reiterate that it is within the exclusive province of the trial court to weigh the evidence." 469 S.W.3d at 428. The family court's finding in this regard was supported by sufficient evidence, and we may not disturb it.

Mother extends the same argument to family court's finding she had not provided parental care or essential needs for Child and there was no reasonable expectation she would improve. Mother additionally points out to a text message regarding an occasion she requested Child's clothing size so her family could buy clothing for Child. Likewise, this argument attempts to relitigate a matter for which there was conflicting testimony. The family court's order demonstrates this evidence was considered and determined to be outweighed by other evidence, including Mother's own testimony regarding the history of her inaction with regard to Child.

The family court must weigh factors to determine the best interest of the child. KRS 199.520(1). To reach a determination of whether a parent has a reasonable expectation for improvement, the family court will also examine the

parent's current parenting ability, rather than just past behavior. *M.E.C.*, 254 S.W.3d at 854. In this case, the orders demonstrate the family court did so. Testimony was undisputed that Mother has a history of drug abuse and, despite numerous efforts at rehabilitation and treatment, she had resumed her active addiction on numerous occasions. The family court noted her most recent return to drug use had occurred during the pendency of the adoption action. Although Mother insists this was involuntary, it is the family court's responsibility to weigh the evidence and make factual findings based on clear and convincing evidence. This Court cannot substitute its judgment for that of the family court unless those findings are clearly erroneous.

Mother's efforts in sobriety and improvement of her life are commendable. However, we cannot say the family court was clearly erroneous when it found, by clear and convincing evidence, the existence of the conditions enumerated in KRS 199.502(1)(a), (e), or (g). Having reviewed the record, we can discern no reversible error in the family court's decision to grant the adoption petition.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Erin N. Hall
Greenup, Kentucky

BRIEF FOR APPELLEE:

Marie E. Troxler
Russell, Kentucky