RENDERED:  MAY 1, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0963-ME

W.K.G.                                                                                              APPELLANT

v.                   APPEAL FROM BARREN CIRCUIT COURT
                HONORABLE MICA WOOD PENCE, JUDGE
                      ACTION NO. 23-AD-00038

A.P.W.; E.S.G., A MINOR CHILD;
AND L.S.W.                                                                                   APPELLEES

AND

NO. 2025-CA-0965-ME

W.K.G.                                                                                              APPELLANT

v.                   APPEAL FROM BARREN CIRCUIT COURT
                HONORABLE MICA WOOD PENCE, JUDGE
                      ACTION NO. 23-AD-00039

A.P.W.; K.E.G., A MINOR CHILD;
AND L.S.W.                                                                                   APPELLEES

# OPINION
## AFFIRMING

** ** ** ** **

BEFORE: L. JONES, McNEILL, AND MOYNAHAN, JUDGES.

JONES, L., JUDGE: This appeal arises from the Barren Circuit Court's May 6, 2026 Findings of Fact and Conclusions of Law and Judgments which terminated the parental rights of Appellant W.K.G. (Father) to his two children, Appellees E.S.G. and K.E.G. (Children), and the June 5, 2025 Findings of Fact and Conclusions of Law and Judgments of Adoption which allowed Appellee A.P.W. (Step-Father) to adopt the Children. Having considered the briefs filed, the relevant law, and record on appeal, we affirm.

## BACKGOUND

Father and Appellee L.S.W. (Mother) married in 2013, and the Children were born in 2013 and 2018. In October 2019, Father was arrested and charged with multiple counts of unlawful transaction with a minor after it was discovered that he had been engaging in unlawful sexual contact with a student at the school where Father was employed as a teacher. Mother filed for divorce in February 2020. In April 2020, Father was released on bond; however, that bond was revoked in July 2020 after Father was found again to be engaging in unlawful sexual contact with the same minor student.

During the three months that Father was released on bond, he continued to communicate with Mother, had a handful of contacts with the Children, and contributed around $600 to Mother for child related expenses. While Mother initially believed there was a possibility of salvaging the marriage, she eventually changed her mind and pursued the divorce. She claimed that Father began sending her letters of an intimidating nature in which he threatened suicide if Mother went through with the divorce proceedings. Their communications came to a head in June 2022 during a pool party at the home of one of Father's family members, where Father discovered that Mother had been pursuing other relationships. Father engaged in some verbal altercations with Mother and Father's brother at the party. Shortly thereafter, Mother received videos Father made for both Mother and the Children in which he expressed some remorse for his actions and told the Children goodbye. Mother did not show the Children the videos but showed them to Father's family due to their concerning nature. Father's sister contacted authorities, and Father was admitted to a mental health facility for a short time. While Father never explicitly stated he was planning to take his own life in the videos, he admitted that he had been contemplating it at the time and made the videos after he decided that he would no longer be in Mother's or the Children's lives.

In November 2020, the decree of dissolution of marriage was entered, with Mother being granted sole custody of the Children. In September 2022, Father pleaded guilty to the criminal charges against him and ultimately received a seventeen-(17) year sentence in February 2023.

Mother and Step-Father married in October 2022, and Step-Father filed a petition for adoption in June 2023. The matter eventually came before the circuit court for a hearing in early 2025. On May 6, 2025, the circuit court entered Findings of Fact and Conclusions of Law and Judgments terminating Father's parental rights and noting that more testimony was necessary concerning Step-Father's fitness and character before entering a judgment for adoption. It specifically utilized the involuntary termination of parental rights statutes, finding that the Children were abused and neglected by virtue of Father's conviction of criminal charges related to the sexual abuse of a minor child. KRS[1] 625.090; KRS 600.020. It also found that Father had abandoned the Children for a period of not less than ninety (90) days, the existence of several other parental unfitness factors under KRS 625.090(2), and that the termination of Father's parental rights would be in the Children's best interests.

The circuit court conducted an additional hearing on May 19, 2025, and subsequently issued a second set of Findings of Fact and Conclusions of Law

---

[1] Kentucky Revised Statutes.

and Judgments of Adoption on June 5, 2025. Father filed motions to reconsider, alter, amend, or vacate both sets of findings and judgments, which were denied. This appeal followed. On appeal, Father argues that the circuit court abused its discretion in its utilization of KRS Chapter 625 concerning his termination of parental rights, rather than KRS Chapter 199, and challenges the sufficiency of the evidence regarding the circuit court's findings concerning his unfitness as a parent.

## STANDARD OF REVIEW

An adoption which occurs without the consent of a child's biological parent by its effect terminates the parental rights of the biological parent. *See Moore v. Asente*, 110 S.W.3d 336, 351 (Ky. 2003). A judgment which terminates parental rights to a child shall only be reversed by this Court if it is clearly erroneous; in other words, there is no substantial, clear, and convincing evidence to support the lower court's decision. *See B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014); *see also* CR[2] 52.01. Clear and convincing evidence exists when it is of a "probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.L.C. v. Cabinet for Health and Family Services,* 411 S.W. 3d 761, 765 (Ky. App. 2013) (citing *Rowland v. Holt*, 70 S.W.2d 5, 9 (1934)). "[U]nder [the clearly erroneous] standard, we are

---

[2] Kentucky Rules of Civil Procedure.

'obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them.'" *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 360 (Ky. 2022) (citations omitted).

ANALYSIS

To begin, we are compelled to elaborate on the differences between adoption proceedings and termination of parental rights proceedings. Each proceeding is governed by separate sets of statutes; KRS Chapter 625 governs terminations of parental rights and KRS Chapter 199 governs adoptions. While some of the statutes are nearly identical,[3] there are some key differences. For example, any adult who has resided in Kentucky over a year may file a petition for adoption, while only the Cabinet, a properly licensed child-placing agency, a County or Commonwealth's attorney, or a parent may file a petition for termination of parental rights. *Compare* KRS 199.470(1) *with* KRS 625.050(3). Additionally, there is no requirement that the circuit court find a child to be adjudged as neglected or abused in adoption proceedings. *A.K.H. v. J.D.C.*, 619 S.W.3d 425, 431 (Ky. App. 2021) (discussing KRS 625.050(1)). In instances, such as contested adoptions, where both KRS Chapter 625 and KRS Chapter 199 may

---

[3] Namely, the parental unfitness factors contained in KRS 199.502(1)(a)-(h) and KRS 625.090(2)(a)-(h), which we shall address further below.

appear to be applicable, "the adoption supersedes the termination because KRS Chapter 199 encompasses Chapter 625 [and so] KRS 199 governs the entirety of the . . . petition." *M.S.S.*, 638 S.W.3d at 361 (internal quotation marks and citations omitted). Thus, the only four distinct considerations which must be contemplated by a circuit court in contested adoption proceedings are:

> (1) [D]id the petitioner comply with the jurisdictional requirements for adoption; (2) have any of the conditions outlined in KRS 199.502(1) been established; (3) is the petitioner of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child as required by the first portion of KRS 199.520(1); and (4) finally, will the best interest of the child be promoted by the adoption, and is the child suitable for adoption as required by the final portion of KRS 199.520(1).

*A.K.H.*, 619 S.W.3d at 431 (footnote omitted).

On appeal, Father argues the circuit court abused its discretion in its utilization of KRS Chapter 625 concerning his termination of parental rights rather than KRS Chapter 199. He takes specific issue with the circuit court's findings regarding the Children being abused and neglected under KRS 625.050(1) and the circuit court's failure to cite KRS 199.502(2) when making its findings regarding parental unfitness factors.

Firstly, as mentioned above, any finding concerning abuse or neglect is not necessary for the granting of a contested adoption. If anything, the circuit court's belief that the extra finding was necessary may have actually prejudiced

Step-Father rather than Father. *See A.K.H.*, 619 S.W.3d at 431 (reversing and remanding after the circuit court denied a step-father's petition for adoption after it found the subject child was *not* adjudicated to be neglected or abused). Therefore, any findings under KRS 625.050(1) are ultimately superfluous and irrelevant to our review.

Secondly, while the circuit court incorrectly cited to the parental unfitness factors of KRS 625.090(2) rather than KRS 199.502(1), any error is harmless because the relevant factors contained within both statutes are essentially identical,[4] and the determinations to be made under both provisions are similar. *R.M. v. R.B.*, 281 S.W.3d 293, 296 (Ky. App. 2009). *Sub judice*, the circuit court addressed all four of the necessary considerations for the granting of an adoption found within KRS Chapter 199.[5] While we agree it would have been ideal for the circuit court not to utilize KRS Chapter 625, there is no abuse of discretion for it

---

[4] We note one difference between KRS 625.090(2)(d) and KRS 199.502(1)(d). KRS 625.090(2)(d) states a termination may be granted upon a showing that "a parent has been convicted of a felony that involved the infliction of serious physical injury to any child[,]" while KRS 199.502(1)(d) limits the conviction to a felony involving serious physical injury to "a child named in the present adoption proceeding[.]" To the extent relevant in the case at hand, the evidence is clear that Father was not convicted of a felony involving the infliction of serious physical injury to either of the Children. However, as we detail further below, this finding was ultimately unnecessary, and does not result in any reversible error.

[5] The bulk of these findings were made at the May 19, 2025, hearing. Notably, while the bifurcation of adoption proceedings in this way is unnecessary and unusual, it is not prohibited. *A.K.H.*, 619 S.W.3d at 431 (citing *A.F. v. L.B.*, 572 S.W.3d 64, 72 (Ky. App. 2019)).

having done so in this instance. We next move to Father's arguments concerning the sufficiency of the evidence regarding the parental unfitness factors.

The circuit court specifically found that Father had satisfied the conditions of KRS 625.090(2)(a), (d), (e), and (g), which substantially mirror KRS 199.502(1)(a), (d), (e), and (g).[6] Though it found four factors, it only needed to

---

[6] In relevant part, KRS 199.502(1) provides:

> [A]n adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:
>
> (a) That the parent has abandoned the child for a period of not less than ninety (90) days;
>
> . . .
>
> (d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to a child named in the present adoption proceeding;
>
> . . .
>
> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child[.]
>
> . . .
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the

have found the existence of one. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019). For our purposes, the Court shall specifically examine the findings regarding abandonment under KRS 199.502(1)(a).

"[A]bandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983). Furthermore, "[s]eparation to constitute abandonment and neglect must be [willful] and harsh." *Kantorowicz v. Reams*, 332 S.W.2d 269, 271–72 (Ky. 1959). Incarceration alone is not sufficient to warrant a finding of abandonment. *J.H. v. Cabinet for Hum. Res.*, 704 S.W.2d 661, 663 (Ky. App. 1985).

Father argues that he did not abandon the Children, and that the only reason he has not had contact with the Children since July 2020 is because Mother has chosen not to allow it. In his favor, Father has written letters to the Children from prison, though the Children never received these letters as Father sent them to his grandparents for concern Mother might not give them to the Children. In addition to the child support Father paid during the time he was released on bond, he also began sending money he intended to be child support payments to his

---

immediately foreseeable future, considering the age of the child[.]

grandparents in 2024 after the filing of the adoption petition, though the Children do not appear to have received this money either.

Regardless, the "[p]ayment of support, though significant, is but one factor to consider among the totality of circumstances when determining parental abandonment." *S.B.B. v. J.W.B.*, 304 S.W.3d 712, 717 (Ky. App. 2010). In the case at hand, the results of Father's criminal actions cannot be overlooked. Father willfully engaged in unlawful sexual contact, several times, with a minor child who was a student at the school where he taught, which resulted in a sentence of incarceration for seventeen years. Even if Father were to obtain parole as soon as he was eligible for it in 2034, one of the Children will already be the age of majority.

Father also squandered the opportunity afforded by the terms of his bond. Rather than seek to continue to provide for the Children and work towards having healthy parental contact with them while not incarcerated, Father chose to again engage in unlawful sexual contact with the same minor he previously victimized. While Father's incarceration may still have been inevitable had he not violated his bond, he could have potentially remained out of incarceration until his ultimate conviction in 2023. *See* Kentucky Criminal Rules of Procedure (RCr) 4.40; RCr 4.42(1); RCr 4.54(1). His choice to continue to engage in criminal actions clearly demonstrates his desire to forfeit his parental responsibilities. *See,*

*e.g.*, *J.R.E. v. Cabinet for Health & Fam. Servs.*, 667 S.W.3d 589, 594 (Ky. App. 2023).

Additionally, Father's noncriminal actions demonstrate abandonment. Father jeopardized a coparenting relationship with his threatening and irrational communications directed towards Mother in the months following his initial arrest. While the Court is sympathetic toward the suicidal ideations Father was experiencing at the time, it is clear that Father intended to abdicate his role as a parent when he sent the videos to Mother in which he said goodbye to the Children. Father also never sought court intervention for establishing or maintaining contact with the Children, his only reason being that he did not know that he could.

From our review of the record, we agree with the circuit court that clear and convincing evidence exists which supports the finding that Father abandoned the Children for a period of not less than ninety (90) days. While Father has demonstrated a desire to better his life while incarcerated and seeks to be a father to the extent he is able to be while incarcerated, that evidence simply does not overcome the weight of the evidence proffered by Mother, Step-Father, and Father by his own admissions. *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 428 (Ky. App. 2015) ("[I]t is within the exclusive province of the trial court to weigh the

evidence. Its finding was supported by sufficient evidence, and we may not disturb it.").

## **<u>CONCLUSION</u>**

Accordingly, we find no reversible error and affirm the Barren Circuit Court's Findings of Fact and Conclusions of Law and Judgments entered on both May 6, 2025, and June 5, 2025, which terminated Father's parental rights and allowed Step-Father to adopt the Children.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE A.P.W.: |
|---|---|
| Ronald L. Hampton | Pamela C. Bratcher |
| Glasgow, Kentucky | Bowling Green, Kentucky |