RENDERED: MAY 23, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1025-ME

L.J.S.          APPELLANT

APPEAL FROM MADISON FAMILY COURT
v.      HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 23-AD-00072

A.C.C.; A.D.C.; CABINET FOR
HEALTH AND FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
AND O.W.S., A MINOR CHILD      APPELLEES

AND

NO. 2024-CA-1026-ME

L.J.S.          APPELLANT

APPEAL FROM MADISON FAMILY COURT
v.      HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 23-AD-00087

A.C.C.; A.D.C.; CABINET FOR
HEALTH AND FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
AND O.W.S., A CHILD      APPELLEES

AND

NO. 2024-CA-1032-ME

L.J.S.                                                                 APPELLANT

APPEAL FROM MADISON FAMILY COURT
v.        HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 23-AD-00073

A.C.C.; A.D.C.; A.D.S., A CHILD;
AND CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY                          APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: LAMBERT, MᶜNEILL, AND TAYLOR, JUDGES.

MᶜNEILL, JUDGE: L.J.S. ("Father") appeals from a Madison Family Court order

terminating his parental rights to his three minor children in this adoption action.[1]

---

[1] The family court bifurcated the adoption proceeding and conducted a hearing on the termination of Father's parental rights on February 14, 2024. Subsequently, the court entered an order terminating Father's parental rights, but deferred ruling on the adoption itself.

We vacate and remand because the family court failed to make the required findings under KRS[2] 199.502.

## BACKGROUND

Father and A.D.C. ("Mother") are the parents of three minor children, O.W.S., Ol.W.S., and A.S. ("Children"). Father and Mother separated in 2019 after allegations Father placed a dog shock collar on Ol.W.S.'s neck and shocked him. The alleged incident led to criminal charges and a dependency, neglect, and abuse ("DNA") action. A condition of Father's bond in the criminal case was that he did not contact the children. Later, the family court extended that no-contact order until it ruled whether Father's parental rights should be terminated in the adoption proceeding. Ultimately, Father was convicted of menacing and the DNA action resulted in a finding of neglect. The couple divorced in 2020 and Mother remarried.

In 2023, A.C.C. ("Stepfather") petitioned to adopt the three minor children without Father's consent under KRS 199.502. The petition alleged that Father has "neglected the child, abused the child, and placed the child at risk of harm[,]" is "substantially incapable of providing essential parental care and protection for the child[ren]," "has continuously or repeatedly failed to provide . . . essential food, clothing, shelter, medical care, and/or education reasonably

---

[2] Kentucky Revised Statutes.

-3-

necessary and available for the child[ren]'s well-being[,]" and "has abandoned the child[ren] for a period of not less than ninety days[.]"

The family court held an evidentiary hearing on the motion where Mother, Stepfather, and Father testified. Following the evidence, the court expressed its position on the case as follows: "There was a finding [of neglect], so we have jumped through hurdle one, theoretically . . . but I have a laundry list of things to look at to determine whether the termination is in the children's best interest . . . ." The family court then allowed time for the parties to submit memorandums supporting their positions.

At the final hearing, the court stated it "believe[d] that the burden was met for a [termination of parental rights ("TPR")]." It then found:

> in terms of findings of fact. . . because the process took so long, because they believe what they believe, I do think it would be absolutely traumatic for them to have a relationship with [Father] against their wishes. . . . for me, it's a no brainer in any other issue of it – that the termination would happen. I think you all met your burden. Because there was a finding there, there's this distance of time, and the reality is, those kids feel it so strongly that it would be traumatic to try to put them through anything else. . . . I think the burden was met, and I am going to grant the TPR for these kids[.]"

Subsequently, the family court entered a written order terminating Father's parental rights that specifically incorporated its oral findings from the

-4-

final hearing. The court then explained its decision to terminate Father's parental rights as follows:

> This Court recognizes [Father] has a Constitutional right to defend himself in a criminal case for acts he did not believe he committed. Perhaps in a different type of case, like a substance abuse case, the children would not have known much about the situation and, as a result, the matter would probably have a different outcome. In the case at hand, however, the allegations related directly to the abuse and neglect of the children. Whether right or wrong, the children believe what they believe, and it would be traumatic for them to have a relationship with [Father] against their wishes if same was forced upon them by the Court. The Court wants to close the door for these children to feel like someone could ever force them to have a relationship with [Father] since they do not desire one and are in fear of same.

Additionally, the court made the following finding: "Based upon . . . the children's lack of contact with [Father], and the wishes of the children, it has been shown by clear and convincing evidence that the termination of [Father]'s parental rights are in the best interest of the children." The family court's order did not reference KRS 199.502, the statute governing adoption without parental consent, or its requirements. This appeal followed.

**STANDARD OF REVIEW**

"An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359 (Ky. 2022) (citation omitted). "Parental rights are a

-5-

fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution." *Id.* (internal quotation marks and citation omitted). Consequently, "termination of parental rights is a grave action which the courts must conduct with utmost caution." *Id.* (internal quotation marks and omitted). "Our review of findings of fact in adoption actions involving terminations of parental rights is confined to the clearly erroneous standard set forth in CR[3] 52.01." *A.F. v. L.B.*, 572 S.W.3d 64, 69-70 (Ky. App. 2019) (citation omitted). However, "to pass constitutional muster, the evidence supporting termination must be clear and convincing." *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427 (Ky. App. 2015) (citing *Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 1403, 71 L. Ed. 2d 599 (1982)). Additionally, "[s]ince adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents." *Day v. Day*, 937 S.W.2d 717, 719 (Ky. 1997).

**ANALYSIS**

Under KRS 199.502(1), "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following [nine] conditions exist with

---

[3] Kentucky Rules of Civil Procedure.

respect to the child[.]" Stepfather's petition relied on the conditions in subsections (a), (e), and (g), which state:

> (a) That the parent has abandoned the child for a period of not less than ninety (90) days;
>
> . . .
>
> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
>
> . . .
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

KRS 199.502(1)(a), (e), (g). Further, in addition to the above, under KRS 199.500(4) "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions of KRS 625.090 exist with respect to the child."

Father makes two main arguments on appeal: (1) the family court impermissibly used the exercise of his constitutional right to a jury trial as a reason to justify terminating his parental rights and (2) the family court failed to make the required findings under KRS 199.502 by clear and convincing evidence to support adoption without consent. As to Father's first argument, he claims the family court terminated his parental rights because he defended himself in his criminal child abuse case. In its order terminating Father's parental rights, the court stated:

> This Court recognizes [Father] has a Constitutional right to defend himself in a criminal case for acts he did not believe he committed. Perhaps in a different type of case, like a substance abuse case, the children would not have known much about the situation and, as a result, the matter would probably have a different outcome. In the case at hand, however, the allegations related directly to the abuse and neglect of the children. Whether right or wrong, the children believe what they believe, and it would be traumatic for them to have a relationship with [Father] against their wishes if same was forced upon them by the Court.

We disagree with Father's interpretation of the court's order and find no error. The family court was merely commenting on how Father's criminal case (and the underlying allegations) had affected the children. It did not say it was terminating Father's parental rights *because* he exercised his right to a jury trial.

Next, Father argues the family court failed to make specific findings concerning the factors outlined in KRS 199.502. He notes its "Findings of Fact/Conclusions of Law do not even identify which subsection it is terminating

under[.]" In nonconsensual adoptions, KRS 199.502(2) mandates the family court to enter findings of fact and conclusions of law after hearing the evidence and the arguments of counsel. That one or more of the KRS 199.502(1) conditions has been pleaded and proved is an essential finding required by statute. KRS 199.502(1). Because "adoption only exists as a right bestowed by statute[,] . . . there must be strict compliance with the adoption statutes. . . . Nothing can be assumed, presumed, or inferred . . . ." *Day*, 937 S.W.2d at 719 (citation omitted).

As it stands, we cannot tell whether the family court met its obligations under KRS Chapter 199. "Without specific findings, this Court cannot discern the basis of the circuit court's decision and there can be no meaningful review[.]" *Patmon v. Hobbs*, 495 S.W.3d 722, 728 (Ky. App. 2016) (internal quotation marks and citation omitted). The family court's order contains no findings concerning which "of the [KRS 199.502(1)(a)-(j)] conditions exist with respect to the child[.]" KRS 199.502(1). It does not even reference KRS Chapter 199. Further, we see no direct correlation between its findings and the allegations in the petition, nor is it evident it considered the KRS 199.502(1) factors. In its order terminating Father's parental rights, the court seems to assume termination is proper. The only reference to any standard is its finding that "it has been shown by clear and convincing evidence that the termination of [Father's] parental rights is in the best interest of the children."

The court's oral findings, which were incorporated into its written order, also give a possible glimpse into the court's reasoning:

> For me, it's a no-brainer . . . that the termination would happen. I think you all met your burden. Because there was a finding there, there's this distance of time, and the reality is, those kids feel it so strongly that it would be traumatic to try to put them through anything else. . . . I think the burden was met, and I am going to grant the TPR for these kids[.]"

Presumably the "finding" referred to by the family court was its finding of neglect in the DNA action. Arguably this could form the basis for granting an adoption without consent under KRS 199.500(4).[4] However, without reference to the statute, we can only guess this was the statutory ground the court relied upon in terminating Father's parental rights. In fact, Father assumes in his brief that the court's determination was made under KRS 199.502(1)(c), demonstrating the uncertainty surrounding the court's reasoning and the need for more specific findings. On remand, the family court should specify which statutory condition or

---

[4] Kentucky courts have never fully explored the interplay between KRS 199.500(4) and KRS 199.502(1). Because KRS 199.500(4) allows a court to grant an involuntary adoption if "any of the provisions of KRS 625.090 exist with respect to the child[,]" KRS 199.502(1) appears redundant since the conditions in KRS 199.502(1)(a)-(j) and KRS 625.090(2)(a)-(j) are substantially the same. In an unpublished opinion, *J.E.K. v. J.M.F.H.*, No. 2022-CA-0227-ME, 2023 WL 1485335 (Ky. App. Feb. 3, 2023), *review denied* (Jun. 7, 2023), a panel of this Court opined in dicta that "the reference of KRS 199.500(4) to KRS 625.090 is properly interpreted as expanding the grounds for an adoption without consent available under KRS 199.502 to include the abuse and neglect grounds delineated in support of involuntary TPR actions." *Id.* at *2.

conditions it found existed with respect to the children and the facts and evidence it relied upon in making its conclusions.

It also makes no difference that Father did not file a motion for additional findings, as argued by Stepfather. Such is not necessary when "it is mandatory that a court make specific findings of fact and conclusions of law . . . [and] a court fails to make them 'for purposes of review.'" *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011). As noted above, an adoption without consent requires a finding that "it [has been] pleaded and proved" that at least one of the KRS 199.502(1)(a)-(j) "conditions exist with respect to the child[.]" KRS 199.502(1) and (2); *see also* KRS 199.500(4).

Finally, Father challenges the family court's termination of his parental rights based upon its prior finding of neglect in the DNA action which only had to be proven by a preponderance of the evidence and not the higher clear and convincing standard constitutionally required in nonconsensual adoptions.[5]

_____

[5] No Kentucky case has addressed whether granting an adoption without consent based solely on a finding of abuse or neglect in a juvenile proceeding (based on the lower, preponderance of the evidence standard) violates a parent's due process rights. Our Supreme Court, in an unpublished case, *Commonwealth, Cabinet for Health and Family Services v. T.G.*, No. 2007-SC-000436-DGE, 2008 WL 3890033 (Ky. Aug. 21, 2008), declined to consider essentially the same issue in the context of KRS 625.090 proceedings to involuntarily terminate parental rights because the family court, in addition to finding the child had been adjudged to be an abused or neglected child in a prior proceeding, also found the child to be an abused or neglected child by clear and convincing evidence in the current proceeding. Thus, the constitutional issue was not properly before the Court. However, it opined that "had [the family court] only found . . . that [child] had previously been adjudged to be an abused or neglected child, then it appears that [parent]'s argument regarding the statute's constitutionality would be relevant." *Id.* at *5.

-11-

We decline to speculate whether the family court's decision to terminate was based solely on its prior finding of neglect. Because we are remanding for more specific findings as to the grounds for the family court's termination of Father's parental rights, we will not address this argument. We would only reiterate that involuntary adoptions effectively terminate parental rights. *See M.S.S.*, 638 S.W.3d at 359 (citation omitted). "Parental rights are a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. As such, termination of parental rights is a grave action which the courts must conduct with utmost caution. So, to pass constitutional muster, the evidence supporting termination must be clear and convincing." *Id.* (internal quotation marks and citations omitted).

## CONCLUSION

Based upon the foregoing, the Madison Family Court's order terminating Father's parental rights is vacated and the matter is remanded for the court to make specific findings under KRS 199.502(1) or KRS 199.500(4) utilizing the clear and convincing evidence standard.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rachel D. Yavelak
Whitney Rowe
Lexington, Kentucky

BRIEF FOR APPELLEE A.C.C.:

Nanci M. House
Winchester, Kentucky